SO ORDERED: June 23, 2005.

**Basil H. Lorch III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ATA Holdings Corp., et al., | ) | Case No. 04-19866-BHL-11 |
| | ) | Jointly Administered |
| Debtors. | ) | |

**ORDER DENYING**
**MOTION TO COMPEL DEBTOR TO ASSUME THE TENTATIVE AGREEMENT**
**WITH THE AIRCRAFT MECHANICS FRATERNAL ASSOCIATION**

This matter came before the Court on the **Motion to Compel Debtor to Assume the Tentative Agreement with the Aircraft Mechanics Fraternal Association** (the "Motion"), filed March 2, 2005, by the Aircraft Mechanics Fraternal Association ("AMFA"). ATA Holdings Corp., et al. (the "Debtors" or "ATA"), filed **ATA's Opposition to AMFA Motion to Compel Assumption of Tentative Agreement** (the "Response") on March 28, 2005. On April 1, 2005, AMFA filed its **Reply of the Aircraft Mechanics Fraternal Association to ATA's Opposition to AMFA Motion to Compel Assumption of Tentative Agreement** (the "Reply"). The Court held a hearing on the Motion on May 3, 2005 (the "Hearing"), at which the parties by counsel presented

their arguments, offered evidence, and examined witnesses.  At the conclusion of the Hearing the Court took the matter under advisement.

For the reasons set forth in the attached Memorandum, the Court finds that AMFA's **Motion to Compel Debtor to Assume the Tentative Agreement with the Aircraft Mechanics Fraternal Association** should be, and hereby is, **DENIED**.

## MEMORANDUM

### JURISDICTION

This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  The Motion concerns a core proceeding under 28 U.S.C. § 157(b)(2), and venue is proper under 28 U.S.C. §§ 1408 and 1409.

### FINDINGS OF FACT

1.      ATA, formerly known as American Trans Air, Inc., is a common carrier by air subject to the provisions of the Railway Labor Act ("RLA").  On February 19, 2002, the National Mediation Board ("NMB") certified AMFA as the duly designated and authorized representative of the Mechanics and Related Employees at American Trans Air, Inc.

2.      On October 11, 2002, ATA and AMFA commenced direct negotiations  for the first collective bargaining agreement for the Mechanics and Related Employees at ATA. Direct negotiations are the first step in contract negotiations under the RLA, during which the parties meet without the assistance of a mediator.

3.      On March 25, 2004, at the joint request of AMFA and ATA to initiate the mediation phase of their negotiations, the NMB assigned a mediator to mediate the bargaining between ATA and AMFA.

4.     On September 29, 2004, AMFA asked the NMB to terminate its services and release the parties from mediation, triggering the RLA's thirty-day "cooling off" period before the parties could resort to self-help.  On October 27, 2004, the NMB declined to release the parties from mediation.  Consequently, the parties remain in bargaining for their initial collective bargaining agreement; they have not been released by the NMB and therefore have not exhausted the mandatory collective bargaining procedures of the RLA.

5.     To facilitate the course of their negotiations, it is customary for parties negotiating labor contracts to address issues seriatim, either by subject matter or by article of a proposed collective bargaining agreement.  When the terms of an agreement on a discrete issue or article of a proposed agreement are acceptable to both parties, the parties are said to have to reached a "tentative agreement" ("T/A") on that issue or article.  The document reflecting the T/A is initialed by the parties' representatives and then set aside as the parties turn their attention to the next issue or article.

6.     When the negotiators have concluded T/As on all issues or articles of a proposed collective bargaining agreement, the T/As are assembled into another document representing the complete agreement of the negotiators on all terms of a proposed collective bargaining agreement. This document is also known, somewhat confusingly, as a "Tentative Agreement."  This Tentative Agreement is then offered to the union membership for ratification by ballot referendum.

7.     AMFA's transmittal letter for its opening proposals to ATA, dated October 11, 2002, stated that "ratification of any Tentative Agreement (T/A) is achieved through a membership secret ballot referendum."

8.     During the course of bargaining between October, 2002, and ATA filing its chapter

3

11 petition on October 26, 2004, AMFA and ATA reached T/As on at least nineteen separate articles of a proposed initial collective bargaining agreement.

9.    The nineteen T/As between ATA and AMFA have not been submitted to AMFA's membership for ratification.

10.    On May 28, 2004, AMFA and ATA reached a T/A on Article 29 of the proposed collective bargaining agreement, subsection E of which provides for moving expenses for employees involuntarily displaced in a furlough.

11.    The terms and conditions of employment for ATA employees who are not covered by collective bargaining agreements are set forth in ATA's Employee Handbook. The "Maintenance Addendum" of the Employee Handbook on "Furlough Policy," effective July 1, 1997, provides that furloughed employees may exercise their seniority to displace less senior employees at other locations, but that "Any relocation expense will be the responsibility of the employee."

12.    ATA's policy on relocation expenses was restated in August, 2002, in a document entitled "Maintenance & Engineering Furlough & Recall Procedures (Effective September 2002)" to be applicable to a planned September 2002 furlough. Those procedures provide that "Any moving expenses associated with furlough/displacement shall be paid for by the employee."

13.    ATA furloughed AMFA-represented employees in September, 2002, in November, 2003, and in October, 2004. Relocation expenses were not paid by ATA in connection with these furloughs.

14.    In a letter dated February 22, 2005, ATA advised certain AMFA-represented employees they would be displaced from their positions and if they could not exercise their seniority over less senior employees, they would be furloughed. ATA's letter further advised that '[a]ny

4

relocation expenses will be at your expense."

DISCUSSION

In the Motion, the Reply, and at the Hearing, AMFA argued that ATA violated the "status quo" (a term of art under the RLA) by making unilateral changes to the reimbursement provisions memorialized in the Article 29 T/A when it followed its company practice of not reimbursing the moving expenses of furloughed mechanics. The bulk of the arguments, evidence, and testimony AMFA presented in defense of the Motion was in support of this argument that ATA violated labor law by unilaterally altering the so-called "status quo." These arguments, and the efforts made by AMFA to support them, glossed over the questions essential to the underlying Motion. The first sentence of AMFA's Motion states:

> Pursuant to 11 U.S.C. §§ 365(d)(2), 1113 and Rule 6006 of the United States Bankruptcy Rules, the Aircraft Mechanics Fraternal Association ("AMFA"), as the exclusive bargaining representative of the craft or class of Mechanics and Related Employees at ATA Airlines, Inc. ("debtor" or "ATA"), f/k/a/ American Trans Air, Inc., files this motion (the "Motion") for entry of an order compelling the debtor to assume a certain executory Tentative Agreement ("TA"), entered into by ATA with AMFA, that, inter alia, contains moving expense reimbursement provisions in Article 29 agreed to on May 28, 2004.

The question of whether ATA violated the "status quo" prescriptions under the RLA is only, at best, tangentially related to the questions for the Court posed by the Motion, viz., whether a T/A as such can be assumed by a debtor under the Bankruptcy Code, whether there even is a T/A between ATA and AMFA, and, in the event one exists, whether ATA can be compelled to assume it.

As noted above, the phrase "tentative agreement" serves at least two functions in the context of negotiations under the RLA: (1) as the description of an agreement between the parties on a

5

discrete issue or article within the course of negotiations on a proposed collective bargaining agreement; and (2) as the title of a final proposed collective bargaining agreement prior to its ratification by the union's membership.

A T/A on one issue is not a final, binding agreement, but is conditioned upon reaching agreement on all outstanding issues between the parties. In fact, even final agreement on all terms between the negotiating parties does not satisfy the condition precedent to the proposed agreement becoming *the* collective bargaining agreement - the union membership's ratification of the agreement by referendum.

In light of both usages of the term "T/A," the Court concludes that AMFA seeks by its Motion an order (1) deeming that those nineteen T/As initialed by the parties constitute a final proposed collective bargaining agreement, and (2) compelling ATA to assume it under § 1113 or § 365 as *the* collective bargaining agreement without prior ratification by AMFA's membership.

Collective bargaining agreements are "executory contracts with a special provision governing their assumption or rejection by the debtor or the trustee in a chapter 11 case." *In re Moline Corp.*, 144 B.R. 75, 78 (Bankr.N.D.Ill.1992). The "special provision" governing their assumption or rejection is § 1113 of the Bankruptcy Code, 11 U.S.C. Section 1113, entitled "Rejection of collective bargaining agreements," provides that

> The debtor in possession, or the trustee if one has been appointed under the provisions of this chapter, other than a trustee in a case covered by subchapter IV of this chapter and by title I of the Railway Labor Act, may assume or reject a collective bargaining agreement only in accordance with the provisions of this section.

11 U.S.C. § 1113(a).

When a chapter 11 debtor is a party to a collective bargaining agreement in the capacity of

6

an employer, the debtor's ability to assume or reject that collective bargaining agreement is governed not by §365, but solely by § 1113. *See*, Norton Bankr. L. & Prac. 2d §35:59. In the Motion, AMFA states that the "certain executory Tentative Agreement...[containing] moving expense reimbursement provisions in Article 29 " that it seeks an order compelling ATA to assume either "falls within the definition of collective bargaining agreement under the bankruptcy code, or if it technically does not, it is still an agreement between [AMFA] and [ATA], and therefore bears some resemblance to a collective bargaining agreement." Insofar as AMFA means, in this instance, by tentative agreement that a final proposed collective bargaining agreement bears some resemblance to a collective bargaining, AMFA is absolutely correct. In fact, such a tentative agreement is identical to a collective bargaining agreement in every respect except the decisive one - that of having the legal status of a contract that is binding upon the parties to it.

There is no evidence, however, that either party understood that any of the individual T/As constituted a collective bargaining agreement, or that any collective bargaining agreement would exist prior to the AMFA membership ratifying a final proposed collective bargaining agreement. No final proposed tentative agreement has been offered to the AMFA membership for ratification. In fact, the parties remain in bargaining for their initial collective bargaining agreement; they have not been released by the NMB and therefore have not exhausted the mandatory collective bargaining procedures of the RLA. In short, there is no collective bargaining agreement between AMFA and ATA. Because § 1113 governs the assumption and rejection of collective bargaining agreements, and because there is no collective bargaining agreement between AMFA and ATA, § 1113 does not afford the means to the relief that AMFA seeks.

In the Motion AMFA also cites § 365(d)(2) as the statutory basis for the order it seeks.

7

Section 365(d)(2) states that

> In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

11 U.S.C. § 365(d)(2).

Presumably AMFA cites § 365(d)(2) as insurance in the event that the Court did not agree with its view that a final proposed tentative agreement's resemblance to a collective bargaining agreement was sufficient for purposes of § 1113. But the defect that prevents a final proposed tentative agreement from acquiring the status of a collective bargaining agreement is the same defect which prevents it or a T/A on a discrete issue or article from acquiring the status of an executory contract. Namely, neither are biding contracts. Therefore, without a contract, there is nothing to assume or reject under § 365(d)(2).

## CONCLUSION

Because there is no collective bargaining agreement between AMFA and ATA, and because the tentative agreements are not binding contracts, AMFA is not entitled to the relief which it seeks. Therefore, the Court finds that the **Motion to Compel Debtor to Assume the Tentative Agreement with the Aircraft Mechanics Fraternal Association** should be, and hereby is, **DENIED**.

# # #

8