**SO ORDERED: June 12, 2006.**

**Basil H. Lorch III**
**United States Bankruptcy Judge**

### IN THE UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ATA Holdings Corp., et al., | ) | Case No. 04-19866 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
### UNDER 11 U.S.C. § 1129(a) AND (b) AND FED. R. BANKR. P. 3020
### CONFIRMING THE SECOND AMENDED PLAN OF LIQUIDATION OF
### <u>C8 AIRLINES, INC., F/K/A CHICAGO EXPRESS AIRLINES, INC.</u>

This matter is before the Court for the entry of an order confirming the Second

Amended Plan of Liquidation of C8 Airlines, Inc., f/k/a Chicago Express Airlines, Inc., dated

March 30, 2006, filed by C8 Airlines, Inc., f/k/a Chicago Express Airlines, Inc. ("C8"), a debtor

in one of the above captioned cases (the "Chapter 11 Case") (the "Plan").  Capitalized terms not

defined here have the meanings ascribed to them in the Plan attached as <u>Exhibit A</u> to this order.

Based upon the (i) Affidavit Of Sean G. Frick In Support Of Confirmation Of The

Second Amended Plan of Liquidation of C8 Airlines, Inc., f/k/a Chicago Express Airlines, Inc.,

(ii) Affidavit Of Balloting Agent Regarding Solicitation And Tabulation Of Votes With Respect

to the Second Amended Plan of Liquidation, C8 Airlines, Inc. f/k/a Chicago Express Airlines, Inc. (the "BMC Affidavit"), (iii) all other evidence admitted and arguments of counsel made at the Confirmation Hearing (as defined below), and (iv) the entire record of the jointly administered chapter 11 cases of C8 and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") after due deliberation thereon; and good and sufficient cause appearing therefor, the Bankruptcy Court hereby makes the following findings of fact, conclusions of law, and enters this Order confirming the Plan.

THIS COURT FINDS AND CONCLUDES:

A.    Filing Of Plan.  On January 31, 2006, C8 filed the Plan Of Liquidation Of C8 Airlines, f/k/a Chicago Express Airlines, Inc. (the "Initial Plan") and the Disclosure Statement With Respect To The Plan of Liquidation of C8 Airlines, Inc., f/k/a Chicago Express Airlines, Inc. (the "Initial Disclosure Statement") (Docket # 3667).  On March 30, 2006, C8 filed an amended version of the Initial Disclosure Statement with an amended version of the Initial Plan ("First Amended Plan") (Dockets # 3906, 3907).  On April 13, 2006, C8 filed the Second Amended Plan of Liquidation Of C8 Airlines, f/k/a Chicago Express Airlines, Inc. (Docket # 3951).

B.    Solicitation Procedures Order and Order Approving Disclosure Statement.  On April 18, 2006, the Bankruptcy Court entered an order establishing various deadlines with regard to consideration of the confirmation of the Plan (Docket # 3972) (the "Solicitation Procedures Order").  On April 18, 2006, the Court entered its order approving the Disclosure Statement that, among other things, approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Fed. R. Bankr. P. 3017 (Docket # 3971).  The Solicitation Procedures Order (i) fixed June 6, 2006, as the date for the

- 2 -

commencement of the hearing to consider confirmation of the Plan (the "Confirmation Hearing"), (ii) approved the form and method of notice of the Confirmation Hearing, and (iii) established certain procedures for soliciting and tabulating votes with respect to the Plan.

C.      Transmittal Of Solicitation Package.  The Notice Of (1) Voting Record Date; (2)  Voting Deadline; (3) Plan Confirmation Objection Deadline; (4) Hearing To Confirm Plan (the "Confirmation Hearing Notice"); (5) Approval of Disclosure Statement; (6) Approval of Order on Solicitation Procedures Motion; (7) a ballot and return envelope (such ballot and envelope being referred to as a "Ballot"), were transmitted to Classes 1 and 2 (collectively, the "Voting Classes") in accordance with Fed. R. Bankr, P. 3017(d), all as set forth in the BMC Affidavit.

D.      Voting Reports.  On June 5, 2006, C8 filed the Voting Report and the BMC Affidavit, certifying the method and results of the Ballot tabulation by BMC for each of the Voting Classes voting to accept or reject the Plan.

E.      Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. § 157(b)(2) And 1334(a)).  The Bankruptcy Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and the Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

F.      Judicial Notice.  The Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Case (and to the extent necessary the chapter 11 cases for the Reorganizing Debtors[1])

---

[1]   The Reorganizing Debtors Chapter 11 Plan was confirmed on January 31, 2006, and became effective on February 28, 2006.

BDDB01 4423978v3

maintained by the Clerk of the Bankruptcy Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered or admitted at, the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases (and to the extent necessary the chapter 11 cases for the Reorganizing Debtors).

G.    Transmittal And Mailing Of Materials: Notice.  Due, adequate and sufficient notice of the Disclosure Statement and Plan and of the Confirmation Hearing, along with all deadlines for voting on or filing objections to the Plan, has been given to all known holders of Claims in accordance with the procedures set forth in the Solicitation Procedures Order.  The Disclosure Statement, Plan, Ballots, Solicitation Procedures Order, and Confirmation Hearing Notice were transmitted and served in substantial compliance with the Solicitation Procedures Order and the Bankruptcy Rules, and such transmittal and service were adequate and sufficient. Adequate and sufficient notice of the Confirmation Hearing and the other bar dates and hearings described in the Solicitation Procedures Order was given in compliance with the Bankruptcy Rules and the Solicitation Procedures Order, and no other or further notice is or shall be required.

H.    Solicitation.  Votes for acceptance or rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Solicitation Procedures Order, all other applicable provisions of the Bankruptcy Code, and all other rules, laws, and regulations.

I.    Ballots.  All procedures used to distribute solicitation materials to the applicable holders of Claims and to tabulate the Ballots were fair and conducted in accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the local rules

- 4 -

applicable to the Bankruptcy Court for the Southern District of Indiana, Indianapolis Division and all other applicable rules, laws, and regulations.

   J. <u>Impaired Classes That Have Voted To Accept The Plan</u>.  As evidenced by the Voting Report, which certified both the method and results of the voting, pursuant to the requirements of sections 1124 and 1126 of the Bankruptcy Code, at least one Impaired Class of Claims, determined without including any acceptance by an insider of C8, has voted to accept the Plan.

   K. <u>Class 3 Deemed To Have Rejected The Plan</u>.  Holders of Interests in Class 3 are not entitled to receive any distribution under the Plan on account of their Interests.  Since none of the holders of Interests in Class 3 are unconditionally entitled to receive a distribution under the Plan, pursuant to Section 1126(g) of the Bankruptcy Code, Class 3 is conclusively presumed to have rejected the Plan, and the votes of holders of Interests in such Class therefore were not required to be solicited.

   L. <u>Burden Of Proof</u>.  C8, as the proponent of the Plan, has met its burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code.

   M. <u>Plan Compliance With Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

    1. <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>.  In addition to Administrative Claims and Priority Tax Claims, Professional Fee Claims and the ATA Administrative Claim (which are not required to be classified), Article II of the Plan designates two (2) Classes of Claims and one (1) Class of Interests.  The Claims and Interests placed in each Class are substantially similar to other Claims or Interests in each such Class.  Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims or Interests.  Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

2.　　Specification Of Treatment Of Impaired Classes (11 U.S.C. 1123(a)(3)). The Plan specifies the Classes of Claims and Interests that are Impaired under the Plan and the treatment of Impaired Claims and Interests in all such Classes. Thus, the Plan satisfies section 1123(a)(3) of the Bankruptcy Code. No Claims required to be classified were unimpaired under the Plan.

3.　　No Impermissible Discrimination (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment for each Claim or Interest in each respective Class unless the holder of a particular Claim has agreed to less favorable treatment with respect to such Claim or the law allows for a different treatment. Thus, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

4.　　Implementation Of Plan (11 U.S.C. § 1123(a)(5)). The Plan is a plan of liquidation and provides adequate and proper means for implementation of the Plan and the delivery of distributions. Thus, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

5.　　Additional Plan Provisions (11 U.S.C. § 1123(b)). The Plan's provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for (a) distributions to holders of Allowed Claims, (b) the disposition of executory contracts and unexpired leases, (c) the retention of, and right to enforce, sue on, settle or compromise (or refuse to do any of the foregoing with respect to) certain claims or causes of action against third parties, to the extent not waived and released under the Plan, (d) resolution of Disputed Claims and Disputed Interests, (e) allowance of certain Claims, (f) indemnification obligations, and (g) releases by holders of Claims and Interests that voted to accept the Plan.

6.　　Fed. R. Bankr. P. 3016(a). The Plan is dated April 13, 2006, and identifies the entity submitting it, thereby satisfying Fed R. Bankr. P. 3016(a).

N.　　C8's Compliance With Bankruptcy Code (11 U.S.C. § 1129(a)(2)). C8 has complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically, C8 is a proper debtor under section 109 of the Bankruptcy Code and C8 is a proper proponent of the Plan under section 1121(a) of the Bankruptcy Code. C8 has complied with the applicable provisions of the Bankruptcy Code, including as provided or permitted by orders of the Bankruptcy Court, the Bankruptcy Rules, and the Solicitation Procedures Order in transmitting the Plan, the Disclosure Statement, the Ballots and related documents and notices, and in soliciting and tabulating votes on the Plan.

O.    Plan Proposed In Good Faith (11 U.S.C. § 1129(a)(3)).  Following good faith negotiations among C8, the ATSB Lenders, the Creditors' Committee and other parties in interest, C8 has proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Case and the formulation of the Plan.

P.    Payments For Services Or Costs And Expenses (11 U.S.C. § 1129(a)(4)).  Any payment made or to be made by C8 for services or for costs and expenses in connection with the Chapter 11 Case, including all administrative expense and substantial contribution claims under sections 503 and 507 of the Bankruptcy Code, or in connection with the Plan and incident to the Chapter 11 Case, has been approved by, or are subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

Q.    Directors, Officers And Insiders (11 U.S.C. § 1129(a)(5)).  C8 is not reorganizing. C8 will continue in existence to complete distributions and recover property of the estate and has complied with section 1129(a)(5).  Brian Hunt will continue as the Secretary and sole director of C8 to attend to the administration of the estate.

R.    No Rate Changes (11 U.S.C. § 1129(a)(6)).  Section 1129(a)(6) of the Bankruptcy Code is satisfied because the Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

S.    Best Interests Test (11 U.S.C. 1129(a)(7)).  The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  Statements in the Disclosure Statement, and evidence admitted at the Confirmation Hearing, establish that each holder of a Claim or Interest in an Impaired Class that has not accepted the Plan will receive or retain under the Plan, on account of such Claim or

- 7 -

Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if C8 were liquidated under chapter 7 of the Bankruptcy Code on such date.

T.    <u>Acceptance By Impaired Class (11 U.S.C. § 1129(a)(8))</u>.  The Court finds that Class 2, an Impaired Class as set forth on the ballot reports attached as Exhibits to the Voting Report, voted to accept the Plan.  Although no creditor in Class 1 cast a ballot with respect to its Claim, C8 reported at the Confirmation Hearing that it believes there are no valid Claims in Class 1 and, if there were any, the Plan provides for payment in full of such Claims.  Class 3 is deemed to have rejected the Plan and, accordingly, confirmation as to that Class only is sought pursuant to 11 U.S.C. § 1129(b).

U.    <u>Treatment Of Administrative And Priority Tax Claims And Other Priority Claims (11 U.S.C. § 1129(a)(9))</u>.  The treatment of Administrative Claims and Other Priority Claims under the Plan satisfies the requirements of section 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims under the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

V.    <u>Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10))</u>.  Except as described in paragraph T above, each Impaired Class of Claims and Interests has voted to accept the Plan, and no insider vote was counted.  Thus, section 1129(a)(10) of the Bankruptcy Code is satisfied.

W.    <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>.  The Plan satisfies section 1129(a)(11) of the Bankruptcy Code absent the provisions in the Plan providing for recovery to prepetition creditors and evidence admitted at the Confirmation Hearing demonstrates the feasibility of the Plan.

BDDB01 4423978v3

X.      Payment Of Fees (11 U.S.C. § 1129(a)(12)).  C8 has paid or will pay on a current basis fees payable under 28 U.S.C. § 1930, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

Y.      Section 1129(a)(13) Retiree Benefits.  Section 1129(a)(13) of the Bankruptcy Code requires a continued same level of payment of retiree benefits following the Effective Date.  There are no retiree benefits implicated in the Chapter 11 Case.

Z.      Section 1129(b) Confirmation of the Plan Over Nonacceptance Of Impaired Classes.  Class 3 is an Impaired Class of Claims or Interests that is deemed to have rejected the Plan pursuant to 11 U.S.C. § 1126(g).  Pursuant to section 1129(b) of the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that not all Impaired Classes have voted to accept the Plan.  All of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8), with respect to Class 3, have been met.  With respect to Classes 3, no holders of Claims or Interests junior to the holders of Claims and Interests in Class 3 will receive or retain any property under the Plan on account of such Interests, no Class of Claims or Interests senior to Class 3 is receiving more than full payment on account of such Claim or Interests.  Accordingly, the Plan is fair and equitable and does not discriminate unfairly, all as required by section 1129(b) of the Bankruptcy Code.

AA.     Principal Purpose Of Plan (11 U.S.C. § 1129(d)).  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).

BB.     Good Faith Solicitation (11 U.S.C. § 1125(e)).  C8 and its agents, representatives, attorneys, and advisors have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Solicitation Procedures Order.  C8, the

Creditors' Committee, the members of the Creditors' Committee in their capacities as such, the

ATSB Lender Parties (solely in such capacity) and BearingPoint, Inc. (formerly KPMG

Consulting, Inc.), as Loan Administrator under the ATSB Loan Agreement, and any of such

parties' respective present or former members, officers, directors, employees, advisors, attorneys,

representatives, financial advisors, investment bankers, or agents and any of such parties'

successors and assigns, are entitled to the protections afforded by section 1125(e) of the

Bankruptcy Code and the exculpation provisions set forth in Article 10.3 of the Plan.

      CC.   <u>Conditions To Confirmation</u>.  All of the conditions to Confirmation set forth in

Article XI of the Plan have been satisfied, waived or will be satisfied by entry of this

Confirmation Order.

      DD.   <u>Retention of Jurisdiction</u>.  The Bankruptcy Court properly may retain jurisdiction

over the matters set forth in Article VIII of the Plan.  Provided, however, that nothing herein

shall constitute a waiver by the United States of any right it may have to assert that the

Bankruptcy Court lacks jurisdiction over any matter set forth in Article VIII of the Plan.

      EE.   <u>Preservation Of Causes Of Action</u>.  It is in the best interests of the holders of

Claims and Interests that the Retained Actions and all Causes of Action that are not expressly

released under the Plan be retained by C8 pursuant to Article 5.3 of the Plan in order to

maximize the value of C8's Estate.

      FF.   <u>The Creditors' Committee</u>.  The Creditors' Committee has acquitted its fiduciary

duty to all unsecured creditors, and there is no evidence to the contrary.

      ACCORDINGLY, IT IS ORDERED:

      1.   <u>Confirmation</u>.  The Plan is APPROVED and CONFIRMED under section

1129 of the Bankruptcy Code.  The terms of the Plan and the Exhibit (substantially in the form

- 10 -

filed on the Exhibit Filing Date) are incorporated by reference into and are an integral part of the Plan and this Confirmation Order.

2.    Objections.  No Objections to confirmation of the Plan were filed or raised at the Hearing.

3.    Provisions Of Plan And Order Nonseverable And Mutually Dependent. The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

4.    Plan Classification Controlling.  The classification of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications set forth on the Ballots tendered to or returned by the holders of Claims against, or Interests in, C8 in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims or Interests under the Plan for distribution purposes, (c) may not be relied upon by any holder of a Claim or Interest as representing the actual classification of such Claims or Interests under the Plan for distributions purposes, and (d) shall not be binding on C8.

5.    Effects Of Confirmation; Immediate Effectiveness; Successors And Assigns.  The stay contemplated by Bankruptcy Rule 3020(e) shall not apply to this Confirmation Order.  Immediately upon the entry of this Confirmation Order, the terms of the Plan (including the Exhibit) and this Confirmation Order are deemed binding upon (a) C8, (b) all holders of Claims against and Interests in C8, whether or not Impaired under the Plan and whether or not, if Impaired, such holders accepted the Plan, (c) each Person acquiring property under the Plan, (d) any other party-in-interest, (e) any Person making an appearance in the

- 11 -

Chapter 11 Case, and (f) respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians of each of the foregoing.

6.      <u>Wind-Up</u>.  As of the date of this Confirmation Order, C8 shall continue its corporate existence solely for the purpose of winding up its affairs, prosecuting and defending actions or proceedings by or against it, collecting and discharging obligations, disposing of and conveying its property, collecting and distributing its property and consummating the terms of the Plan.

7.      <u>Exculpation and Limitations Of Liability</u>.  The exculpation and limitation of liability provisions set forth in Article 10.3 of the Plan are deemed incorporated in this Confirmation Order as if set forth in full herein and are hereby approved in their entirety.

8.      <u>Automatic Stay</u>.  The stay in effect in the Chapter 11 Case pursuant to section 105 or 362(a) of the Bankruptcy Code shall continue to be in effect until the Effective Date, and at that time shall be dissolved and of no further force or effect.

9.      <u>Matters Relating To Implementation Of The Plan: General Authorizations</u>. The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of C8 or any officer thereof to take any and all actions necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.

10.      <u>Preservation Of Causes Of Action</u>.  C8 shall retain and may (but is not required to) enforce all Retained Actions and other similar claims arising under applicable state laws, including, without limitation, preference actions, fraudulent transfer claims, if any, and all other Causes of Action of a trustee and debtor-in possession under the Bankruptcy Code.  C8

- 12 -

will determine whether to bring, settle, release, compromise, or enforce any such rights (or decline to do any of the foregoing).  The failure of C8 to specifically list any claim, right of action, suit or proceeding in Exhibit A to the Plan, or otherwise, does not, and will not be deemed to, constitute a waiver or release by C8 of such claim, right of action, suit or proceeding, and will retain the right to pursue such claims, rights of action, suits or proceedings in its sole discretion, in consultation with the Creditors' Liquidation Committee, and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit or proceeding upon or after the confirmation or consummation of the Plan; provided, however, that notwithstanding the payment on account of an Allowed Claim, C8 shall retain the right to assert and/or pursue any Retained Actions against the parties subject thereto any and all rights ancillary thereto, including the right to collect judgments thereon.

> 11.    Rejected Contracts and Leases.  Upon the Effective Date, all Executory Contracts and Unexpired Leases which were not previously rejected by C8 shall be deemed automatically rejected as of the Effective Date or such earlier date as C8 may have unequivocally terminated their performance under such lease or contract.

> 12.    Professional Claims And Final Fee Applications.  The provisions of Articles 2.3 and 9.1 of the Plan and the Professional Fee Order, dated December 10, 2004, shall govern Professional Claims, including final fee applications, payment of interim amounts, and post-Effective Date compensation and retention, and deadlines and procedures relating thereto.

> 13.    Substantial Contribution Compensation And Expenses Bar Date.  Any person who requests compensation or expense reimbursement for making a substantial contribution in the C8 Chapter 11 Case pursuant to sections 503(b) (3), (4) and (5) of the

Bankruptcy Code must file an application with the Clerk of the Bankruptcy Court, on or before the Professional Fee Bar Date, and serve such application on counsel for C8 and the Creditors' Committee, the ATSB and as otherwise required by the Bankruptcy Court and the Bankruptcy Code on or before the Professional Fee Bar Date, or be forever barred from seeking such compensation or expense reimbursement.

14.    <u>Creditors' Liquidation Committee</u>.  The Creditors' Liquidation Committee shall consist of Airport Terminal Services, Air Line Pilots Association International, and John Hancock Funds, and may employ professionals to assist it and such professionals may be compensated from and after the Confirmation Date from the Estate in an aggregate amount not to exceed $40,000.00 for fees and expenses.  The Creditors' Committee is dissolved as of the Effective Date.

15.    <u>Resolution Of Claims And Interests</u>.  Except as otherwise ordered by the Bankruptcy Court, any Claim or Interest that is not an Allowed Claim or Allowed Interest shall be determined, resolved, or adjudicated in accordance with the terms of the Plan.  C8 and the Creditors' Liquidation Committee may (a) until 120 days after the Effective Date (unless extended by order of the Bankruptcy Court) file objections in the Bankruptcy Court to the allowance of any Claim or Interest (whether or not a proof of Claim or Interest has been filed) and/or (b) amend their schedules at any time before the Chapter 11 Case is closed.

16.    <u>Cancellation of Existing Equity Securities and Agreements</u>.  On the Effective Date, except as otherwise specifically provided for in the Plan or this Order (a) the Old Holdings Common Stock, Old Holdings Preferred Stock, the Old Holdings Unsecured Notes and any other note, bond, indenture, pass through trust agreement, pass through trust certificate, equipment trust certificate guarantee, or other instrument or document directly or indirectly

- 14 -

evidencing or creating any indebtedness or obligation of or ownership interest in C8, shall be

cancelled as to C8, and C8 shall not have any continuing obligations thereunder, and (b) the

obligations of, Claims against, and/or Interests in C8 under, relating, or pertaining to any

agreements, indentures, certificates of designation, bylaws, or certificate or articles of

incorporation or similar documents governing the Old Holdings Common Stock, Old Holdings

Preferred Stock, the Old Holdings Unsecured Notes and any other note, bond, indenture, or other

instrument or document evidencing or creating any indebtedness or obligation of C8, except such

will be released and discharged; provided, that any such agreement that governs the rights of the

holder of a Claim will continue in effect solely for purposes of (i) allowing an indenture trustee,

an agent or a servicer (each hereinafter referred to as a "Servicer") to make the distributions to be

made on account of such Claims under the Plan as provided in Article VI of the Plan, (ii)

permitting such Servicer to maintain any rights or liens it may have against property other than

C8's property for fees, costs, and expenses under such Indenture or other agreement, and (iii)

governing the rights and obligations of non-debtor parties to such agreements, vis-à-vis each

other and (iv) preserving any claims by or on behalf of bondholders, indenture trustee, loan

trustee, subordination agents, pass through trustees or similarly situated parties against any

Person (other than the Reorganizing Debtors or Reorganized Companies or C8) that arise under

or are related to such agreements; provided, further, that the preceding proviso will not affect the

discharge of Claims against or Interests in C8 Debtors under the Bankruptcy Code, the

Confirmation Order, or this Plan, or result in any expense or liability to C8.

       17.    <u>Payment Of Fees</u>.  All fees payable by C8 under 28 U.S.C. § 1930 shall be

paid on or before the Effective Date, and C8 shall thereafter pay any statutory fees that come due

until the case is closed, converted or dismissed.

18.     Authorization To Consummate Plan.  The Bankruptcy Court authorizes C8 to consummate the Plan after entry of this Confirmation Order.

19.     Failure To Consummate Plan And Substantial Consummation.  If consummation of the Plan does not occur, then the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), and any document or agreement executed pursuant to the Plan, shall be null and void.  In such event, nothing contained in the Plan or this Confirmation Order, and no acts taken in preparation for consummation of the Plan, shall (a) constitute a waiver or release of any claims by or against (including any Claims) or Interests in C8 or any other Person, (b) prejudice in any manner the rights of C8 or any Person in any further proceedings involving C8, (c) constitute an admission of any sort by C8 or any other Person, or (d) be construed as a finding of fact or conclusion of law with respect thereto.  Upon the occurrence of the Effective Date, the Plan shall be deemed substantially consummated.

20.     Retention Of Jurisdiction.  Pursuant to §§ 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction as provided in the Plan over all matters arising out of, and related to, the C8 Chapter 11 Case and the Plan to the fullest extent permitted by law.  Provided, however, that nothing herein shall constitute a waiver by the United States of any right it may have to assert that the Bankruptcy Court lacks jurisdiction over any matter set forth in Article VIII of the Plan.

21.     References To Plan Provisions.  The failure to include or specifically reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the

- 16 -

Plan be confirmed in its entirety.  The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

22.    <u>Notice Of Confirmation Order And Occurrence Of Effective Date</u>.  On or before the fifth (5th) Business Day following the occurrence of the Effective Date, C8 shall serve notice of this Confirmation Order and occurrence of the Effective Date pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), on all holders of claims, the United States Trustee, the Creditors' Committee, and other parties-in interest, by causing a notice of this Confirmation Order and the occurrence of the Effective Date in substantially the form of the notice annexed hereto as Exhibit 1, which form is hereby approved (the "Notice of Effective Date"), to be delivered to such parties by first class mail, postage prepaid, provided, however, that notice need not be given or served under the Bankruptcy Code, the Bankruptcy Rules, or this Confirmation Order to any Person to whom C8 mailed a notice of the Bar Date or Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved-left no forwarding address," "forwarding order expired," or similar reason, unless C8 has been informed in writing by such Person of that Person's new address.  The notice described herein is adequate under the particular circumstances of the Chapter 11 Case, and no other or further notice is necessary.

23.    <u>28 U.S.C. § 157(d)</u>.  Nothing in this Confirmation Order or the Plan is intended to modify or violate 28 U.S.C. § 157(d).

###

Requested by:

James M. Carr
Terry E. Hall
Stephen A. Claffey
Jeffrey C. Nelson
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000

Wendy W. Ponader
Ponader & Associates, LLP
5241 North Meridian Street
Indianapolis, Indiana  46208
Telephone:  (317) 496-3072
Facsimile:  (317) 257-5776

Distribution:

Core Group
2002 List
Appearance List

BDDB01 4423978v1

Exhibit A

**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ATA Holdings Corp., et al.,[1] | ) | Case No. 04-19866 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**SECOND AMENDED
PLAN OF LIQUIDATION OF C8 AIRLINES, INC.
F/K/A CHICAGO EXPRESS AIRLINES, INC.**

James M. Carr (#3128-49)
Terry E. Hall (#22041-49)
Stephen A. Claffey (#3233-98)
Jeffrey C. Nelson (#25173-49)
BAKER & DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000

Dated: April 13, 2006, Indianapolis, Indiana

---

[1] The Debtors are the following entities: ATA Holdings Corp. (04-19866), ATA Airlines, Inc. (04-19868), Ambassadair Travel Club, Inc. (04-19869), ATA Leisure Corp. (04-19870), Amber Travel, Inc. (04-19871), American Trans Air Execujet, Inc. (04-19872), ATA Cargo, Inc. (04-19873), and C8 Airlines, Inc. f/k/a Chicago Express Airlines, Inc. (04-19874).

1

## TABLE OF CONTENTS

LIST OF EXHIBITS ................................................................................................ 3

INTRODUCTION ................................................................................................ 4

ARTICLE I    Definitions, Rules of Interpretation, and Computation of Time ........................... 4

ARTICLE II    Unclassified Claims and Treatment ................................................. 14

ARTICLE III    Classified Claims ............................................................. 15

ARTICLE IV    Voting on the Plan ........................................................... 15

ARTICLE V    Implementation of the Plan ................................................. 16

ARTICLE VI    Provisions Governing Distributions............................................ 17

ARTICLE VII    Executory Contracts and Unexpired Leases ......................................... 19

ARTICLE VIII    Retention of Jurisdiction ..................................................... 19

ARTICLE IX    Remaining Issues ........................................................... 20

ARTICLE X    Effect of the Plan on Claims and Interests .......................................... 24

ARTICLE XI    Conditions Precedent ....................................................... 25

BDDB01 4376968v1

## <u>LIST OF EXHIBITS</u>

Exhibit A              Non-Exclusive List of Retained Actions

# INTRODUCTION

C8 Airlines, Inc., formerly named Chicago Express Airlines, Inc. (the "Debtor"), one of the above captioned Debtors and Debtors-in-Possession, proposes the following chapter 11 plan (the "Plan"). This Plan is a plan of liquidation as substantially all of the assets of the Debtor have been sold pursuant to orders of the Bankruptcy Court. If the Plan is confirmed, following the final distributions, C8 will be dissolved as a corporation.

Assuming the estimates of the Debtor are correct and including the estimated net recoveries that may be realized by the prosecution of Avoidance Claims and Retained Actions, the Debtor believes it will have sufficient funds to pay all Allowed Administrative Claims, Priority Tax Claims, and Professional Fee Claims. The Debtor is also obligated on a post-Petition Date Administrative Claim basis to ATA Airlines, Inc. ("ATA") for an amount in excess of $6.1 million for advances made by ATA to or for the benefit of the Debtor in the ordinary course during the Chapter 11 Case (the "ATA Administrative Claim"). It is not expected that the ATA Administrative Claim will be paid in full. However with the consent of ATA, the Plan proposes to distribute to Allowed General Unsecured Claims on a pro rata basis a total of the lesser of (a) $1 million or (b) one half of the amounts (net of attorneys' and other professionals' fees and expenses) recovered through the prosecution of Avoidance Claims.

Except as otherwise provided, the Plan proposes to pay the creditors of the Debtor's estate pursuant to the priorities established by the Bankruptcy Code with the exception noted above for payments to General Unsecured Creditors ahead of full payment of the ATA Administrative Claim. The specific provisions for implementing this Plan are set forth in the following Articles.

## Definitions, Rules of Interpretation, and Computation of Time

A.    In General. For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined have the meanings ascribed to them in Article I.B of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter; (c) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (d) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (e) any reference to a Person as a holder of a Claim or Interest includes that Person's successors and

4

assigns; (f) all references in this Plan to Articles and Exhibits are references to Articles and Exhibits of or to this Plan; (g) the words "herein," "hereof," "hereunder" and "hereto" unless limited by further reference refer to this Plan in its entirety rather than to a particular portion of this Plan; (h) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (i) subject to the provisions of any contract, articles of incorporation, by-laws, instrument, release or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; and (j) the rules of construction set forth in section 102 of the Bankruptcy Code will apply.

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.  A period described as a number of "days" (as opposed to "Business Days") means calendar days.

All references in the Plan to monetary figures refers to United States of America currency unless otherwise expressly provided.

Any and all Exhibit(s) are incorporated into and are a part of this Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court on or before the Exhibit Filing Date.  After the Exhibit Filing Date, copies of Exhibits can be obtained upon request to The BMC Group, Inc. ("BMC"), claims and voting agent to the Debtor or by downloading such exhibits from BMC's website (www.bmccorp.net/ata) or the Court's website (www.insb.uscourts.gov).  To the extent any Exhibit is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-Exhibit portion of the Plan shall control.

B.     <u>Definitions</u>.

1.1     "Administrative Claim" means a Claim other than the ATA Administrative Claim or Professional Fee Claims for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to sections 507(a)(1), 507(b) or 1114 (e)(2) of the Bankruptcy Code, including, but not limited to, (a) the actual, necessary costs and expenses, incurred on or after the Petition Date, of preserving the Estate and operating the business of the Debtor, including without limitation wages, salaries or commissions for services rendered after the commencement of the Chapter 11 Case, (b) all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, and (c) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under section 546(c)(2)(A) of the Bankruptcy Code.

1.2     "Administrative Claims Bar Date" means the deadline established by the Administrative Claims Bar Date Order of the Bankruptcy Court and being October 25, 2005. The Administrative Claims Bar Date does not apply to Professional Fee Claims, which are subject to the provisions of Article 9.10 hereof, nor to the ATA Administrative Claim.

1.3     "Administrative Claims Bar Date Order" means the order entered by the Bankruptcy Court on October 5, 2005 establishing the Administrative Claims Bar Date.

1.4     "Affiliates" has the meaning given such term by section 101(2) of the Bankruptcy Code.

1.5     "Allowed . . . Claim" or "Allowed . . . Interest" means a Claim or any portion thereof, or an Interest or any portion thereof, (a) that has been allowed by a Final Order of the Bankruptcy Court (or such other court or forum as the Debtor and the holder of such Claim or Interest agree may adjudicate such Claim or Interest and objections thereto), or (b) as to which, on or by the Effective Date, (i) no proof of claim or interest has been filed with the Bankruptcy Court and (ii) the liquidated and noncontingent amount of which is Scheduled, other than a Claim or Interest that is Scheduled at zero, in an unknown amount, or as disputed, or (c) for which a proof of claim or interest in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed by the Claims Objection Deadline, the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order, or (d) that is expressly allowed in a liquidated amount in the Plan, or (e) that has been settled.  For purposes of voting to accept or reject the Plan pursuant to Article IV, Allowed Claim or Allowed Interest includes a Claim or Interest (t) listed in a liquidated, noncontingent, and undisputed amount on the Schedules and for which a timely proof of claim or interest has not been filed as of the Voting Deadline, (u) that has been estimated pursuant to Bankruptcy Rule 3018(a) and the Solicitation Procedures Order, or (v) a timely proof of claim or proof of interest has been filed and no objection remains pending as of the Confirmation Hearing.

1.6     "Allowed Class . . . Claim" or "Allowed Class . . . Interest" means an Allowed Claim or an Allowed Interest in the specified Class.

1.7     "ATA" means ATA Airlines, Inc., an Indiana corporation, debtor-in-possession in Case No. 04-19868 pending in the Bankruptcy Court.

1.8     "ATA Administrative Claim" means the aggregate sum owed by the Debtor to ATA for the payment of expenses incurred by C8 after the Petition Date.

1.9     "ATSB" means the Air Transportation Stabilization Board created pursuant to the Air Transportation Safety and Stabilization Act, P.L. 107-42 (2001) (the "Act") and the regulations issued by the Office of Management and Budget under the Act, 14 C.F.R. Part 1300, Aviation Disaster Relief – Air Carrier Guarantee Loan Program.

1.10     "ATSB Agent" means Citibank, N.A. in its capacity as Agent (as defined in the ATSB Loan Agreement) under the ATSB Loan Agreement.

1.11     "ATSB Lender Parties" means Govco Incorporated, as Primary Tranche A Lender, Citibank, N.A. as Alternate Tranche A Lender, Tranche B Lender, Collateral Agent and Agent, Citicorp North America, Inc., as Govco Administrative Agent, and the ATSB, in each case, as set forth in more detail in the ATSB Loan Agreement.

6

1.12   "ATSB Lenders" means the lenders from time to time (and as of the time relevant to the use of the definition herein) under the ATSB Loan Agreement and the Amended and Restated ATSB Loan Agreement.

1.13   "ATSB Lenders Settlement Agreement" means the ATSB Lenders Settlement Agreement approved by an order of the Bankruptcy Court entered April 20, 2005.

1.14   "ATSB Loan Agreement" means the $168 million Loan Agreement, dated November 20, 2002, among ATA, as Borrower, Holdings, as Parent, Govco Incorporated, as Primary Tranche A Lender, Citibank, N.A., as Alternate Tranche A Lender, Citicorp North America, Inc., as Govco Administrative Agent, Citibank, N.A., as Tranche B Lender, BearingPoint, Inc. (formerly KPMG Consulting, Inc.), as Loan Administrator, Citibank, N.A., as Collateral Agent, Citibank, N.A., as Agent and the ATSB, governing the ATSB Loan Obligations (as defined in the Cash Collateral Order).

1.15   "Available Cash" with respect to any obligation under the Plan means all Cash, which is the property of the Debtor less (a) amounts distributable with respect to obligations under the Plan having a higher priority or right to receive a distribution, (b) the Contested Administrative Creditor Reserve (c) the Professional Fee Claim Reserve, and (d) the Preference Recovery Pool.

1.16   "Avoidance Claims" means Causes of Action against Persons arising under any of sections 502, 510, 541, 542, 543, 544, 545, 547, 548 through 551 and 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation has been commenced as of the Confirmation Date to prosecute such Avoidance Claims.

1.17   "Ballot" means the forms mailed to the holders of Claims for the purpose of voting to accept or reject the Plan.

1.18   "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended and codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as in effect on October 26, 2004.

1.19   "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Indiana.

1.20   "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceeding therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

1.21   "Bar Date Order" means the order entered by the Bankruptcy Court on December 21, 2004, establishing the Bar Date.

1.22   "Bar Date" means the deadlines set by the Bankruptcy Court under the Bar Date Order or otherwise and including bar dates established by Bankruptcy Court Order for filing

claims arising from the rejection or executory contracts and or unexpired leases for filing proofs of claim or interest in the Chapter 11 Case.

1.23     "Business Day" means any day, excluding Saturdays, Sundays and "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are generally open for business in Indianapolis, Indiana.

1.24     "C8 General Unsecured Claim" means the scheduled unsecured claim of C8 against ATA as of the Petition Date and which is subject to setoff.

1.25     "Cash" means legal tender of the United States of America and equivalents thereof.

1.26     "Cash Collateral Order" means the Second Interim and Final Order Authorizing Debtors' use of Cash Collateral and Use, Sale and Lease of Other Pre-Petition Collateral, approved by order of the Bankruptcy Court entered December 10, 2004, as it has been and may be amended, modified, supplemented and extended from time to time.

1.27     "Causes of Action" means any and all actions, proceedings, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, rights of offset, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, including Avoidance Claims unless otherwise waived or released by the Debtor.

1.28     "Chapter 11 Case" means the chapter 11 case of the Debtor pending in the Bankruptcy Court.

1.29     "Claim" means a claim against the Debtor, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

1.30     "Claims Agent" means The BMC Group, Inc. ("BMC")which maintains an office at The BMC Group, 1330 E. Franklin Avenue, El Segundo, California  90245, and on the Internet at www.bmcgroup.com.

1.31     "Claims Objection Deadline" means that day which is 120 days after the Effective Date (unless such day is not a Business Day, in which case such deadline shall be the next Business Day thereafter), as the same may be from time to time extended by the Bankruptcy Court, without further notice to parties-in-interest.

1.32     "Class" means a class of Claims or Interests designated pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code and described in Article III of the Plan.

1.33     "Confirmation Date" means the date of entry on the Bankruptcy Court's docket of the Confirmation Order.

BDDB01 4376968v1

1.34   "Confirmation Hearing" means the hearing before the Bankruptcy Court held to consider  confirmation of the Plan and related matters under section 1128 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.35   "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.36   "Contested Administrative Claim" means an Administrative Claim that is the subject of an objection which has not been resolved.

1.37   "Contested Administrative Claim Reserve" means the aggregate sum of Cash reserved for payment of Contested Administrative Claims upon the allowance of such Contested Administrative Claim.  The Contested Administrative Claim Reserve shall reserve the aggregate Face Amount of the filed Contested Administrative Claims unless the Court allows a lower estimation upon motion of the Debtor.

1.38   "Creditors' Committee" means the Official Committee of Unsecured Creditors appointed pursuant to section 1102(a) of the Bankruptcy Code in the Chapter 11 Case of the Debtor.

1.39   "Creditors' Liquidation Committee" means the post-Effective Date committee established pursuant to Article 9.5 of this Plan.

1.40   "Disallowed Claim" or "Disallowed Interest" means a Claim or any portion thereof, or an Interest or any portion thereof, that (a) has been disallowed by a Final Order, (b) is Scheduled at zero or as contingent, disputed or unliquidated and as to which a Bar Date applies but no proof of claim or interest has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) is not Scheduled and as to which a Bar Date applies but no proof of claim or interest has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

1.41   "Disbursing Agent" means BMC.  With respect to the Old Holdings Unsecured Notes, the Disbursing Agent shall be the Servicer.

1.42   "Disclosure Statement" means the written disclosure statement that relates to this Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such disclosure statement may be amended, modified or supplemented from time to time.

1.43   "Disputed Claim" or "Disputed Interest" means a Claim or any portion thereof, or an Interest or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, nor an Allowed Interest or a Disallowed Interest, as the case may be, and includes, without limitation, Claims or Interests that (a) have not been Scheduled by the Debtor or has been Scheduled at zero, or have been Scheduled as unknown, contingent, unliquidated or disputed, whether or not such Claims or Interests are the subject of a proof of claim or proof of interest in

9

the Bankruptcy Court, (b) are the subject of a proof of claim or interest that differs in nature, amount or priority from the Schedules, or (c) are the subject of an objection filed with the Bankruptcy Court, which has not been withdrawn or overruled by a Final Order of the Bankruptcy Court.

1.44 "Disputed Claim Amount" means (a) if a liquidated amount is set forth in the proof of claim relating to a Disputed Claim, (i) the liquidated amount set forth in the proof of claim relating to the Disputed Claim; (ii) an amount agreed to by the Debtor and the holder of such Disputed Claim; or (iii) if a request for estimation is filed by the Reorganizing Debtors or the Disbursing Agent, the amount at which such Claim is estimated by the Bankruptcy Court; (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) an amount agreed to in writing by the Debtor and the holder of such Disputed Claim, (ii) the amount estimated by the Bankruptcy Court with respect to such Disputed Claim or (iii) zero, if neither of (i) or (ii) applies; or (c) if the Claim was listed on the Schedules as unliquidated, contingent or disputed and no Proof of Claim was filed, or deemed to have been filed, by the applicable Bar Date and the Claim has not been resolved by written agreement of the parties or an order of the Bankruptcy Court, zero.

1.45 "Distribution Date" means the date, selected by the Debtor occurring as soon as practicable after the Effective Date, upon which distributions to holders of Allowed Claims entitled to receive distributions under the Plan shall commence.

1.46 "Distribution Record Date(s)" means the date(s), beginning with the date ten (10) Business Days before the Effective Date as of which date the identities of holders of Claims will be established for purposes of distributions under the Plan on the Periodic Distribution Dates.

1.47 "Distribution Reserve" has the meaning ascribed to it in Article 6.7 herein.

1.48 "Effective Date" means the first Business Day on which all conditions to the consummation of the Plan occurred.

1.49 "Estate" means the bankruptcy estate of the Debtor created pursuant to section 541 of the Bankruptcy Code.

1.50 "Exhibit" means an exhibit annexed or to be annexed to this Plan or an Exhibit annexed to the Disclosure Statement as applicable.

1.51 "Exhibit Filing Date" means the date on which Exhibits to the Plan shall be filed with the Bankruptcy Court, which date shall be no fewer than ten days prior to the Voting Deadline, unless a later date is approved by the Bankruptcy Court.

1.52 "Face Amount" means, (a) when used in reference to a Disputed or Disallowed Claim, the full stated liquidated amount claimed by the holder of a Claim in any proof of claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

1.53    "Final Order" means an order or judgment, the operation or effect of which has not been stayed, reversed or amended, and as to which order or judgment (or any revision, modification or amendment thereof), the time to appeal or seek review or rehearing or move for a new trial has expired, and as to which no appeal or petition for review, reargument, rehearing or proceeding for a new trial was timely filed or, if timely filed, remains pending.

1.54    "General Unsecured Claim" means a Claim against the Debtor that is not an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim, an ATA Administrative Claim, or an Other Priority Claim, and includes the general unsecured claim of Holdings against the estate of C8 which Claim shall be setoff against the C8 General Unsecured Claim.

1.55    "Impaired" refers to any Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.56    "Indenture Trustee" means Wells Fargo Bank Northwest, N.A. or its successor as the indenture trustee for the Old Holdings Unsecured Notes.

1.57    "Insured Claim" means any Claim to the extent such Claim arises prior to the Petition  Date from an incident or occurrence that is covered under the Debtor's insurance policies, but solely to the extent such Claim is covered by such insurance policies.

1.58    "Interest" means the rights and interests of the holder of any equity security, including options or warrants to purchase equity securities, stock appreciation rights or other rights to purchase or deliver in exchange for equity securities, including preferred stock, options or warrants to purchase or otherwise acquire the same and any Claims arising out of the purchase and sale of any such securities.

1.59    "Old Holdings Unsecured Notes" means, collectively, the outstanding 2005 Senior Unsecured Notes, the 2009 Senior Unsecured Notes and the 2010 Senior Unsecured Notes.

1.60    "Ordinary Course Professional Order" means the Bankruptcy Court's Amended Order Pursuant to 11 U.S.C. §§ 105(a), 327(e) and 331 Authorizing Retention of Professionals Utilized by the Debtors in the Ordinary Course of Business (Docket No. 714).

1.61    "Other Priority Claim" means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code other than a Priority Tax Claim, a Professional Fee Claim, the ATA Administrative Claim or an Administrative Claim.

1.62    "Periodic Distribution Dates" means (a) the Distribution Date, as to the first distribution made by the Debtor, and (b) thereafter, the first Business Day occurring at the completion of the claims reconciliation process and the settlement or other disposition of all Avoidance Actions.

1.63    "Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate,

BDDB01 4376968v1

unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code), or other entity.

1.64    "Petition Date" means October 26, 2004, the date on which the Debtor filed its petition for relief in the Bankruptcy Court commencing the Chapter 11 Case.

1.65    "Plan" means this chapter 11 plan for the resolution of outstanding Claims and Interests in the Chapter 11 Case, as herein proposed by the Debtor, including all Exhibits, supplements, amendments, appendices and schedules hereto, either in their present form or as the same may be later filed or further altered, amended or modified from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

1.66    "Preference Recovery Pool" means Cash reserved for payment to holders of Allowed Class 2 Claims as provided in Article 5.6 up to an aggregate sum of the lesser of (a) $1 million or (b) one-half of the recoveries on Avoidance Claims (net of expenses including attorneys' and other professionals' fees and expenses incurred in prosecuting such Avoidance Claims).

1.67    "Priority Tax Claim" means a Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

1.68    "Professional" means those Persons retained in the Chapter 11 Case by separate Bankruptcy Court orders pursuant to sections 327 and 1103 of the Bankruptcy Code or otherwise; provided, however, that Professional does not include those Persons retained pursuant to the Ordinary Course Professional Order.

1.69    "Professional Fee Claim" means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses or other charges and disbursements incurred, relating to services rendered or expenses relevant to this Chapter 11 Case and incurred after the Petition Date and prior to and including the Effective Date.

1.70    "Professional Fee Orders" means the orders entered by the Bankruptcy Court on December 10, 2004, authorizing the interim payment of Professional Fee Claims.

1.71    "Professional Fee Reserve" means the funds designated to be reserved for payment of Professional Fee Claims.

1.72    "Reorganizing Debtors" means Holdings, ATA, ATA Leisure Corp., ATA Cargo, Inc., and American Transair Execujet, Inc.

1.73    "Reorganizing Debtors' Plan" means the Amended Joint Chapter 11 Plan for Reorganizing Debtors As Immaterially Modified confirmed by order of the Bankruptcy Court on January 31, 2006 and effective on February 28, 2006.

1.74    "Retained Actions" means all Causes of Action which the Debtor may hold against any Person (other than Released Parties), including, without limitation, (a) any Causes of Action brought prior to the Confirmation Date, (b) any Causes of Action against any Persons for

failure to pay for products or services provided or rendered by the Debtor, (c) any Causes of Action relating to strict enforcement of the Debtor's intellectual property rights, including patents, copyrights and trademarks, and (d) any Causes of Action seeking the recovery of the Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtor's business, and (e) all Avoidance Claims.  A nonexclusive list of Retained Actions is attached hereto as <u>Exhibit A</u>

1.75    "Scheduled" means, with respect to any Claim or Interest, the status, priority and amount, if any, of such Claim or Interest as set forth in the Schedules.

1.76    "Schedules" means the schedule of assets and liabilities and the statement of financial affairs filed in the Chapter 11 Case by the Debtor, as such schedule or statement has been or may be further modified, amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

1.77    "Servicer" has the meaning ascribed to it in <u>Article 6.3</u> hereof.

1.78    "Solicitation Procedures Order" means the order of the Bankruptcy Court, approved on _____, 2006 that sets forth the procedures for the solicitation of votes to accept or reject the Plan.

1.79    "Unclaimed Property" has the meaning ascribed to it in <u>Article 9.9</u> of this Plan.

1.80    "Unimpaired" refers to any Claim or Interest which is not Impaired.

1.81    "Voting Class" means a Class of Claims or Interests under this Plan that is entitled to vote to accept or reject the Plan.

1.82    "Voting Deadline" means the date and time established by the Solicitation Procedures Order.

1.83    "2005 Senior Unsecured Notes" means the 9 5/8% Senior Notes of Holdings due in December 2005 issued and outstanding under the Indenture, dated as of December 11, 1998, by and among Amtran, Inc. (n/k/a ATA Holdings Corp.), as issuer, American Trans Air, Inc. (n/k/a ATA Airlines, Inc.), Ambassadair Travel Club, Inc., ATA Vacations, Inc. (n/k/a ATA Leisure Corp.), Amber Travel, Inc., American Trans Air Training Corporation, American Trans Air Execujet, Inc. and Amber Air Freight Corporation (n/k/a ATA Cargo, Inc.), as guarantors, and First Security Bank, N.A., as trustee, as supplemented.

1.84    "2009 Senior Unsecured Notes" means those certain Senior Notes of Holdings due 2009 issued and outstanding under the Indenture, dated as of January 30, 2004, among ATA Holdings Corp. (f/k/a Amtran, Inc.), as issuer, ATA Airlines, Inc. (f/k/a American Trans Air, Inc.), Ambassadair Travel Club, Inc., ATA Leisure Corp. (f/k/a ATA Vacations, Inc.), Amber Travel, Inc., American Trans Air Training Corporation, American Trans Air Execujet, Inc., ATA Cargo, Inc. (f/k/a Amber Air Freight Corporation), and Chicago Express Airlines, Inc., as guarantors and Wells Fargo Bank Northwest, National Association, as trustee.

13

1.85    "2010 Senior Unsecured Notes" means those certain Senior Notes of Holdings due 2010 issued and outstanding under the Indenture, dated as of January 30, 2004, among ATA Holdings Corp. (f/k/a Amtran, Inc.), as issuer, ATA Airlines, Inc. (f/k/a American Trans Air, Inc.), Ambassadair Travel Club, Inc., ATA Leisure Corp. (f/k/a ATA Vacations, Inc.), Amber Travel, Inc., American Trans Air Training Corporation, American Trans Air Execujet, Inc., ATA Cargo, Inc. (f/k/a Amber Air Freight Corporation), and Chicago Express Airlines, Inc., as guarantors, and Wells Fargo Bank Northwest, National Association, as trustee.

## ARTICLE II

## Unclassified Claims and Treatment

2.1    Administrative Claims.  Except as otherwise set forth in this Plan, each holder of an Allowed Administrative Claim shall be paid in Cash in full but without interest on the Distribution Date or within 30 days following the date such Administrative Claim becomes an Allowed Claim if not an Allowed Claim on the Distribution Date.  The aggregate amount of any Contested Administrative Claims as of the Distribution Date shall be set aside by the Debtor in the Contested Administrative Claim Reserve, subject to estimation by the Debtor.  Contested Administrative Claims that are thereafter Allowed shall be paid from the Contested Administrative Claim Reserve.  However, nothing in this Article 2.1 shall constitute a waiver by any agency or entity of the United States to assert the right to receive postpetition interest with respect to any Administrative Claim.

2.2    Priority Tax Claims.  Each holder of an Allowed Priority Tax Claim shall be paid in full in Cash, but without interest, on the Distribution Date.

2.3    Professional Fee Claims.  Each holder of an Allowed Professional Fee Claim shall be paid in Cash on the Distribution Date or within 30 days following the date such Professional Fee Claim is Allowed if not so Allowed on the Distribution Date.  Any entity retained and requesting compensation pursuant to sections 327, 328, 330, or 331 of the Bankruptcy Code shall be entitled to file an application for allowance of final compensation and reimbursement of fees and expenses for services performed and costs incurred from and after the Petition Date, through the Confirmation Date not later than the sixtieth (60) day after the Effective Date.  The aggregate amount of sums estimated to be payable to Professionals shall be set aside and reserved in the Professional Fee Reserve, and Professional Fee Claims shall be paid from the Professional Fee Reserve as and when and with respect to the amount approved by the Bankruptcy Court.

2.4    ATA Administrative Claim.  The ATA Administrative Claim shall be Allowed on the Confirmation Date and shall be paid as soon as practicable after the Effective Date in full to the extent it can be paid from Available Cash.  The ATA Administrative Claim is subject to reduction by the value of the consideration payable to the Debtor pursuant to the Reorganizing Debtors' Plan for the C8 General Unsecured Claim, after first setting off any Allowed General Unsecured Claims held by the Reorganizing Debtors against the estate of the Debtor.

The ATA Administrative Claim consists of expenses paid by ATA for the Debtor in Cash and includes Cash funding for ordinary course expenses, fuel, handling costs, the lease

payments for the Debtor's aircraft, taxes owed by the Debtor, and the fees and expenses of Professionals employed in this Chapter 11 Case. This Cash funding, net of certain refunds received by the Debtor for insurance policies and other adjustments, total an estimated $27.98 million in cash funding which sum may increase with additional scrutiny of professional fees and expenses paid by ATA but which were incurred for the benefit of the Debtor and potential liability for administrative claims asserted based on the use and rejection of the Debtor's leased aircraft. The Debtor's revenue during this same period totaled $21.87 million, resulting in ATA's Administrative Claim of not less than $6.1 million.

## ARTICLE III

### Classified Claims

3.1     <u>Class 1 Other Priority Claims</u>. Each Holder of an Allowed Class 1 Other Priority Claim shall be paid in full by the Debtor from Available Cash to the full extent permitted under section 507(a) of the Bankruptcy Code, but without interest, as soon as practicable following the Distribution Date or the date such Claim becomes an Allowed Claim.

**Class 1 is Impaired under the Plan.**

3.2     <u>Class 2 General Unsecured Claims</u>. Each Holder of an Allowed Class 2 General Unsecured Claim shall be paid pro rata by the Debtor from the Preference Recovery Pool to the full extent permitted under section 507(a) of the Bankruptcy Code, but without interest, as soon as practicable following the Distribution Date or the date such Claim becomes an Allowed Claim.

**Class 2 is Impaired under the Plan.**

3.3     <u>Class 3 Equity Interests</u>. No distributions will be made to Class 3 and the equity Interests will be cancelled on the date the Chapter 11 Case is closed.

**Class 3 is Impaired under the Plan.**

## ARTICLE IV

### Voting on the Plan

4.1     <u>Classes Entitled to Vote</u>. The holders of Claims in Classes 1 and 2 are entitled to vote on the Plan.

4.2     <u>Deemed to Reject the Plan</u>. The holders of Interests in Class 3 shall receive no distributions under the Plan and are deemed to reject the Plan.

4.3     <u>Class Acceptance Requirement</u>. A Voting Class shall have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims of the Voting Class that have voted on the Plan by casting valid Ballots.

4.4    <u>Cramdown</u>.  In the event that any Impaired Class of Claims shall fail to accept the Plan in accordance with section 1129(b) of the Bankruptcy Code, the Debtor reserves the right to request that the Court confirm the Plan in accordance with the "cramdown" provisions of section 1129(b) of the Bankruptcy Code.

**ARTICLE V**

**<u>Implementation of the Plan</u>**

5.1    <u>Liquidation of Assets</u>.  On and after the Confirmation Date, and subject to the Effective Date, the Debtor may, without further approval of the Bankruptcy Court, (1) use, sell, assign, transfer, abandon or otherwise dispose of at a public or private sale the Debtor's remaining assets, if any, for the purpose of liquidating and converting such assets into cash, making distributions and fully consummating the Plan and (2) settle and compromise any Avoidance Claim or Retained Action; <u>provided, however</u>, that the Debtor shall provide five (5) business days' prior written notice to the Creditors' Liquidation Committee of the settlement and compromise of an Avoidance Action where payments made by the Debtor in the 90 days prior to the Petition Date totaled at least $200,000 or where the payments made within a seven day variance of ordinary course totaled at least $50,000.  Notwithstanding the notice provision above, the Debtor shall have full authority to settle any Avoidance Action for at least eighty percent (80%) of the asserted Avoidance Action without prior notice to the Creditors' Liquidation Committee.

5.2    <u>Distribution Procedures</u>.  On the Effective Date, or as soon thereafter as practicable, the Debtor shall remit from Available Cash payments to holders of all Allowed Administrative Claims, Allowed Professional Fee Claims, and Allowed Priority Tax Claims and shall remit the balance of Available Cash, less the Administrative Claim Reserve and the Professional Fee Reserve and the Preference Recovery Pool, to ATA in partial satisfaction of ATA's Administrative Claim.  Distributions to Allowed General Unsecured Claims shall be made from the Preference Recovery Pool and shall occur as soon as practicable following a pro rata estimation of all General Unsecured Claims and the recovery of the Avoidance Actions. Distributions to any holder of an Allowed Claim shall be allocated first to the principal portion of any such Allowed Claim, and, only after the principal portion of any such Allowed Claim is satisfied in full, to any portion of such Allowed Claim comprising interest (but solely to the extent that interest is an allowable portion of such Allowed Claim and allowed under this Plan). Unless otherwise specifically provided for in the Plan, the Confirmation Order, or required by applicable bankruptcy law, (i) post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim and (ii) interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

5.3    <u>Preservation of Causes of Action</u>.  In accordance with section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in this Plan, the Debtor will retain and may (but is not required to) enforce all Retained Actions and all other similar claims arising under applicable state laws, including, without limitation, fraudulent transfer claims, if any, and all

16

other Causes of Action of a trustee and a debtor-in-possession under the Bankruptcy Code. The Debtor will determine in consultation with the Creditors' Liquidation Committee, subject to the limitations of notice set forth in Article 5.1 above, whether to bring, settle, release, compromise, or enforce such rights (or decline to do any of the foregoing), and will not be required to seek further approval of the Bankruptcy Court for such action unless the Creditors' Liquidation Committee objects to any such settlement and compromise of an Avoidance Action in which case Bankruptcy Court approval of such settlement and compromise shall be sought.

5.4     Exclusivity Period. The Debtor will retain exclusive right to amend or modify the Plan, subject to the prior written notice to the Creditors' Committee (not to be unreasonably denied), in accordance with the terms hereof; and to solicit appearances of any amendment to or modifications of the Plan, through and until the Effective Date.

5.5     Exemption From Certain Transfer Taxes and Recording Fees. Pursuant to section 1146(c) of the Bankruptcy Code, any transfers from the Debtor or to any other Person or entity pursuant to the Plan will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, Federal Aviation Administration filing or recording fee or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

5.6     Preference Recovery Pool. After having distributed or reserved as otherwise provided herein for all Claims provided for in Articles 2.1, 2.2, 2.3, and 3.1, the Debtor shall reserve and hold as secured in a separate account one-half of all amounts (net of attorneys' and other professionals' fees and expenses incurred by the Debtor in connection with the prosecution of Avoidance Actions) recovered from Avoidance Actions up to a total of $1 million.

## ARTICLE VI

### Provisions Governing Distribution

6.1     Time of Distributions. Except as otherwise provided for herein or ordered by the Bankruptcy Court, distributions under the Plan shall be made on a Periodic Distribution Date.

6.2     No Interest on Claims. Unless otherwise specifically provided for in the Plan, 11 U.S.C. § 506(b), the Confirmation Order, a Bankruptcy Court order or a postpetition agreement in writing between the Debtor and a holder of a Claim, postpetition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an Allowed Claim. Provided, however, that nothing is this Article 6.2 shall constitute a waiver by

17

an agency or entity of the United States to assert the right to received postpetition interest with respect to any Administrative Claims.

6.3     Disbursing Agent.  The Disbursing Agent shall make all distributions required under this Plan except with respect to a holder of a Claim whose distribution is governed by an agreement and is administered by an indenture trustee agent or a servicer (each hereafter referred to as a "Servicer"), which distributions shall be deposited with the appropriate Servicer, who shall deliver such distributions to the holders of Claims in accordance with the provisions of this Plan and the terms of the governing agreement; provided, however, that if any such Servicer is unable to make such distributions, the Disbursing Agent, with the cooperation of such Servicer, shall make such distributions.

6.4     Cancellation of Securities or Instruments As to the Debtor.  As of the Effective Date, each instrument evidencing a Claim (a "Certificate") shall be cancelled solely with respect to the Debtor and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another to such instruments.

6.5     Services of Indenture Trustees, Agents and Servicers.  The services, with respect to consummation of the Plan, of Servicers under the relevant agreements that govern the rights of holders of Claims shall be as set forth in this Plan, and the Debtor shall reimburse any Servicer (including the Indenture Trustee) for reasonable and necessary services performed by it (including reasonable attorneys' fees) as contemplated by, and in accordance with this Plan, without the need for the filing of an application with, or approval by, the Bankruptcy Court.  The payments shall be made in full in Cash as soon as practicable after the Effective Date.  However, any such payment shall be made only if the Servicer has provided the Debtor with an estimate of any such fees and expenses prior to the Confirmation Hearing and such fees and expenses are subject to a reasonableness analysis based on the projected recovery under this Plan for Claims related to the Servicer's services.

6.6     Claims Administration Responsibility.  The Debtor will retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving all Claims against and Interests in the Debtor.  Unless otherwise extended by the Bankruptcy Court, any objections to Claims shall be served and filed on or before the Claims Objection Deadline.  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the holder of a Claim if the Debtor effects service in any of the following manners: (i) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for the holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the proof of claim or interest or other representative identified on the proof of claim or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared on behalf of the holder of a Claim in the Chapter 11 Case.  Any Claim determined and liquidated pursuant to (i) an order of the Bankruptcy Court, or (ii) applicable non-bankruptcy law (which determination has not been stayed, reversed or amended and as to which determination (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending) shall be deemed, to the extent applicable, an Allowed Claim in such liquidated amount and satisfied in accordance with the Plan (provided

18

that, to the extent a Claim is an Allowed Insured Claim, such Allowed Claim shall be paid from the insurance proceeds available to satisfy such liquidated amount).  Nothing contained in this Article 6.6 shall constitute or be deemed a waiver of any claim, right, or Cause of Action that the Debtor may have against any person in connection with or arising out of any Claim or Claims, including without limitation, any rights under section 157(b) of title 28 of the United States Code.

　　　　6.7　　Procedures for Treating and Resolving Disputed Claims.  No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim.  Distribution with respect to Allowed Claims of each individual agency or entity of the United States shall be made in accordance with the terms of the Plan as soon as all of the Claims of that individual agency or entity are resolved.  The Debtor shall establish appropriate reserves for Disputed Claims in any class, as it determines are necessary and appropriate.  Prior to making any distributions to holders of a particular class or type of Claim, the Debtor shall determine whether a Distribution Reserve (a "Distribution Reserve") is necessary.  If the Debtor determines that a Distribution Reserve is necessary, the Debtor shall establish a Distribution Reserve to withhold from any such distributions 100% of distributions to which holders of Disputed Claims would be entitled under the Plan as of such date if such Disputed Claim were an Allowed Claim in their Disputed Claim Amount.  Notwithstanding the foregoing, the Disbursing Agent shall have the right to request estimation of any Disputed Claim and authority from the Bankruptcy Court to withhold less than 100% of the Disputed Claim Amount from distributions to holders of Allowed Claims in that class or type.  The holder of a Disputed Claim shall not be entitled to receive or recover any amount in excess of the amount provided in the Distribution Reserve to pay such Claim.

## ARTICLE VII

## Executory Contracts and Unexpired Leases

　　　　7.1　　Any executory contract or unexpired lease that has not already been either assumed and assigned or rejected by an order of this Court shall be rejected as of the Confirmation Date.  Counterparties to Executory contracts and unexpired leases rejected pursuant to the Confirmation Order shall have 30 days from the Confirmation Date to file a proof of Claim for any damages arising from the rejection or be forever barred from asserting such Claim.

## ARTICLE VIII

## Retention of Jurisdiction

　　　　8.1　　The Bankruptcy Court shall retain jurisdiction over the Debtor for the following purposes:  (a) to determine the extent, validity and amount of any and all Claims and Disputed Claims, whether secured or unsecured, including allowance and estimation of claims; (b) to determine any and all applications for compensation through the Effective Date or thereafter only as required pursuant to the Plan; (c) to determine any and all (i) causes of action brought by

the Debtor against third Persons; (ii) adversary proceedings; and (iii) contested matters; (d) to effectuate, interpret, and enforce the provisions of the Plan; (e) to correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan; and (f) to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code.  Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan, including, among others, the following matters:

a.      to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

b.      to enforce all orders previously entered by the Bankruptcy Court; and

c.      to enter a decree closing the Chapter 11 Case.

Nothing in this Article 8.1 shall constitute a waiver by the United States of any right it may have to assert that the Bankruptcy Court lacks jurisdiction over any matter set forth herein.

## ARTICLE IX

## Remaining Issues

9.1     Payment of U.S. Trustee's Fees.  All fees payable to 28 U.S.C. Section 1930 shall be paid when due until the closing of the Debtor's case.

9.2     No Admission Against Error.  Neither the filing of the Plan, the Disclosure Statement, nor any statement contained therein, shall be or be deemed an admission against interest.  In the event the Plan is not consummated, neither the Plan, the Disclosure Statement nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside the Bankruptcy Court involving the Debtor or its former officers, directors, or Interest Holders.

9.3     No Waiver.  Nothing set forth in the Plan or the Disclosure Statement shall be deemed a waiver or release of any claims, rights or causes of action against any Person other than the Debtor except as set forth specifically in the Plan.

9.4     Post-Confirmation Notice.  Pursuant to Bankruptcy Rule 2002 and any applicable local Bankruptcy Rules, notice of all post-Confirmation matters for which notice is required to be given shall be deemed sufficient if served upon counsel for the U.S. Trustee's Office, counsel to the Creditors' Committee, counsel to the Debtor and all persons on the Bankruptcy Rule 2002 service list.  With the exception of the Debtor, the Creditors' Committee and the U.S. Trustee, any Person desiring to remain on the Debtor's Bankruptcy Rule 2002 service list shall be required to file a request for continued service and to serve such request upon counsel to the Debtor and the Creditors' Committee within thirty (30) days subsequent to the Effective Date.

BDDB01 4376968v1

Persons shall be notified of such continued notice requirements in the notice of entry of the Confirmation Order. Persons who do not file a request for continued service shall be removed from the Bankruptcy Rule 2002 service list.

9.5    <u>The Creditors' Committee</u>. The Creditors' Committee shall be dissolved on the Effective Date of the Plan, and a Creditors' Liquidation Committee comprised of the three members of the Post Confirmation Committee formed in the Reorganizing Debtors' Plan shall be formed for the limited purposes of assisting the Debtor with the appropriate procedures for the settlement of General Unsecured Claims; overseeing the distributions to the holders of General Unsecured Claims under the Plan and the collection of Avoidance Claims, to appear before and be heard by the Bankruptcy Court and other courts of competent jurisdiction in connection with the above limited duties; and such other matters as may be agreed upon between the Debtor and the Creditors' Liquidation Committee. The Creditors' Liquidation Committee may employ, without further order of the Court, professionals to assist it in carrying out its duties as limited above, including any professionals retained in this Chapter 11 Case, and the Debtor shall pay the reasonable costs and expenses of the Creditors' Liquidation Committee, including reasonable professional fees, in the ordinary course without further order of the Court, which fees and expenses shall not exceed $40,000.

9.6    <u>Plan Modification</u>. The Plan may be altered, amended or modified before or after the Confirmation Date in accordance with Section 1127 of the Bankruptcy Code.

9.7    <u>Setoff Against Claims</u>. The Debtor may set off against any Claim, and the payments made pursuant to the Plan in respect of such Claim, any claims or causes of action of any nature whatsoever that the Debtor may have against the holder of the Claim, but neither the failure to do so nor the allowance of such Claim shall constitute a waiver or release by the Debtor of any claims, rights or causes of actions against the holder of the Claim. Any payment in respect of a disputed, unliquidated or contingent Claim shall be returned promptly to the Debtor in the event and to the extent such Claims are determined by the Court or any other court of competent jurisdiction not to be Allowed Claims. Confirmation of the Plan shall bar any right of setoff claimed by a creditor unless such creditor filed, prior to the Confirmation Date, a motion for relief from the automatic stay seeking the authority to effectuate such a setoff right. All defenses of the Debtor with respect to any such motion are hereby preserved. Provided, however, that nothing in this Plan shall enjoin or otherwise impair any right of set off and/or recoupment that the United States may otherwise have.

9.8    <u>Further Action</u>. The Debtor is authorized to take any action necessary or appropriate to execute the provisions of the Plan.

9.9    <u>Unclaimed Property</u>. Unclaimed Property shall be deposited in a segregated account established by the Debtor. Such Unclaimed Property shall be held in such account, in trust, for the benefit of the holders of Allowed Claims entitled thereto under the terms of the Plan. For a period of one hundred twenty (120) days following the distribution to creditors under the Plan, Unclaimed Property: (a) shall be held in such segregated account solely for the benefit of such holder or holders which have failed to claim such Unclaimed Property; and (b) shall be released from such segregated account and delivered to the holder entitled thereto upon

presentation of proper proof by such holder of its entitlement thereto.  After expiration of one hundred and twenty (120) days, the holders of Allowed Claims theretofore entitled to such Unclaimed Property shall cease to be entitled thereto, and such Claims of the Unclaimed Property shall be deemed disallowed in their entirety and the funds shall be redistributed to the other holders of Allowed Claims in order of priority in accordance with the terms of this Plan. Such funds shall not be subject to the escheat laws of any state.

9.10    Professional Fee Claims Bar Date.  Any and all applications for the request for the final allowance of Administrative Claims incurred by professionals employed pursuant to Sections 327 and 1103 of the Bankruptcy Code shall be filed with the Bankruptcy Court and served upon counsel to the Debtor on or before the date which is sixty (60) days after the Effective Date.  Failure to file and serve timely such applications or requests shall result in the disallowance of such Professional Fee Claims and such Professional Fee Claims shall be barred forever.

9.11    Compliance with Tax Requirements.  In connection with the Plan, the Debtor shall comply with all withholding and reporting requirements imposed by federal, state, local, and foreign taxing authorities and all Distributions hereunder shall be subject to such withholding and reporting requirements.

9.12    Compliance with All Applicable Laws.  If notified by any governmental authority that it is in violation of any applicable law, rule, regulation, or order of such governmental authority relating to its businesses, the Debtor shall comply with such law, rule, regulation, or order; provided that nothing contained herein shall require such compliance by the Debtor if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings by the Debtor, and, if and where appropriate, an adequate reserve has been set aside on the books of Debtor.

9.13    Dissolution of the Debtor.  After the closing of the Chapter 11 case, the Debtor will be dissolved pursuant to the laws of the State of Georgia.

9.14    Allocation of Plan Distributions Between Principal and Interest.  To the extent that any Allowed Claim entitled to a distribution under the Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

9.15    Governing Law.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Indiana shall govern the construction and implementation of the Plan, any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).  Corporate governance matters shall be governed by the laws of the state of incorporation of the Debtor.

BDDB01 4376968v1

9.16   <u>Notices</u>. Any notice required or permitted to be provided to the Debtor or the Creditors' Committee shall be in writing and served by (a) certified mail, return receipt requested, (b) hand delivery, or (c) overnight delivery service, to be addressed as follows:

If to the Debtor:

C8 Airlines, Inc.
7337 Washington Street
Indianapolis, IN 46231
Attention:  Brian Hunt

with a copy to:

Baker & Daniels LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Attention:  Terry E. Hall, Esq.

If to the Creditors' Committee:

Akin Gump Strauss Hauer & Feld LLP
590 Madison Avenue
New York, New York  10022
Attention:  Lisa Beckerman

BDDB01 4376968v1

# ARTICLE X

## Effect Of The Plan On Claims And Interests

10.1    Compromises and Settlements.  In accordance with this Plan, pursuant to Bankruptcy Rule 9019(a), without further order of the Bankruptcy Court, the Debtor may compromise and settle various (a) Claims against it and (b) Causes of Action that it may have against other Persons.  The Debtor expressly reserves the right to compromise and settle Claims against it and claims it may have against other Persons.

10.2    Satisfaction of Subordination Rights.  All Claims against the Debtor and all rights and claims between or among the holders of Claims relating in any manner whatsoever to distributions on account of Claims against the Debtor, based upon any subordination rights, whether asserted or unasserted, legal or equitable, shall be deemed satisfied by the distributions under the Plan to the holders of Claims having such subordination rights, and such subordination rights shall be deemed waived, released, discharged, and terminated as of the Effective Date. Distributions to the various Classes of Claims hereunder shall not be subject to levy, garnishment, attachment, or like legal process by the holder of any Claim by reason of any subordination rights or otherwise, so that each holder of a Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.

10.3    Exculpation and Limitation of Liability.  Except as otherwise specifically provided in this Plan, the Debtor, the Creditors' Committee, the members of the Creditors' Committee in their capacities as such, the Indenture Trustee, the ATSB Lender Parties (solely in such capacity) and BearingPoint, Inc. as the Loan Administrator under the ATSB Loan agreement, and any of such parties' respective present or former members, officers, directors, employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns, shall not have or incur, and are hereby released from, any claim, obligation, Cause of Action, or liability to one another or to any holder of a Claim or an Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Debtor's Chapter 11 Case, negotiation and filing of the Plan, filing the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

## ARTICLE XI

### Conditions Precedent

11.1   <u>Conditions to Confirmation</u>.  The following are conditions precedent to confirmation of the Plan that may be satisfied or waived in accordance with <u>Article 11.3</u> of the Plan:

a.   The Bankruptcy Court shall have approved a disclosure statement with respect to the Plan in form and substance acceptable to the Debtor, the ATSB, and the Creditors' Committee,

b.   The Confirmation Order shall be in form and substance reasonably acceptable to the Debtor, the ATSB, and the Creditors' Committee.

11.2   <u>Conditions to Consummation.</u>  The Effective Date shall have occurred.  The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with <u>Article 11.3</u> of the Plan:

a.   The Confirmation Order shall have been entered by the Bankruptcy Court and shall remain unstayed.

b.   The Confirmation Date shall have occurred.

c.   All other actions, documents, consents and agreements necessary to implement the Plan shall have been effected, obtained and/or executed.

11.3   <u>Waiver of Conditions to Confirmation or Consummation.</u>  The conditions set forth in <u>Articles 11.1</u>, and <u>11.2</u> of the Plan may be waived by the Debtor, with the consent of the Creditors' Committee and the ATSB, not to be unreasonably withheld, without any notice to other parties-in-interest or the Bankruptcy Court and without a hearing.  The failure of the Debtor in its sole discretion to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

Dated: Indianapolis, Indiana
      April 13, 2006

                C8 Airlines, Inc.
                DEBTOR AND DEBTOR-IN-POSSESSION AS PROPONENT

                By:_ /s/ Terry E. Hall_____
                  By Counsel on behalf of C8 Airlines, Inc.

James M. Carr (#3128-49)
Terry E. Hall (#22041-49)

25

Stephen A. Claffey (#3233-98)
Jeffrey C. Nelson (#25173-49)
BAKER & DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000

BDDB01 4376968v1

# PLAN EXHIBIT A

NONEXCLUSIVE LIST OF RETAINED ACTIONS

**NONEXCLUSIVE LIST OF RETAINED ACTIONS (INCLUDING A NONEXCLUSIVE LIST OF AVOIDANCE ACTIONS THAT ARE RETAINED ACTIONS)**

Pursuant to Article 5.3 of the Plan[1], the Debtor will expressly reserve all Causes of Action that are held or otherwise assertable prior to the Effective Date by the Debtor (collectively, the "Retained Actions" and individually a "Retained Action") for possible assertion by the Debtor. Such Retained Actions do not include any Cause of Action that is or has been previously expressly waived, relinquished, released, compromised or settled in or by the Plan as confirmed by the Confirmation Order or pursuant to a Final Order. Therefore, no preclusion doctrine, including, without limitation, any doctrine of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to any Retained Action. Creditors of the Debtor and any Person to whom the Debtor has incurred an obligation (whether on account of services, purchase, or sale of goods or otherwise), or who has received services from the Debtor or a transfer of money or property from the Debtor, or who has transacted business with the Debtor, or leased equipment or property from or to the Debtor should assume that the circumstances regarding such obligation, receipt of services, transfer, lease or other transaction may be reviewed by the Debtor and may (to the extent not theretofore expressly waived, relinquished, released, compromised or settled) be the subject of a Retained Action asserted by the Debtor after the Effective Date, whether or not (a) such Person has filed a proof of claim against the Debtor in the Chapter 11 Case; (b) such Person's proof of claim has been objected to; (c) such Person's Claim was included in the Schedules; or (d) such Person's Scheduled Claim has been objected to by the Debtor or has been identified by the Debtor as disputed, contingent or unliquidated. Pursuant to Article 5.3 of the Plan, nothing herein is or shall be construed as a representation or assertion by the Debtor that any Retained Action identified or described herein is a valid Cause of Action or that the Debtor will, in fact, assert or prosecute any such Retained Action.

Without limitation, the Debtor will expressly reserve and shall retain all of the following Causes of Action, including, without limitation, the Avoidance Claims identified below (the following being a nonexclusive list of the Retained Actions):

(a)     Retained Actions arising out of facts, transactions or occurrences giving rise to or that otherwise form the basis of or constitute setoffs or counterclaims with respect to objections to Claims;

(b)     All Avoidance Claims (except to the extent Avoidance Claims have been expressly waived or released by the Debtor), including, without limitation, all Avoidance Claims based on payments made by the Debtor within 90 days of the Petition Date, including those identified on the nonexclusive list of Avoidance Claims attached hereto as <u>Schedule 1</u>. The Debtor will expressly reserve the right to pursue any and all Avoidance Claims against all payees, whether or not such payees are included on Schedule 1; and

(c)     Any other Retained Actions, including, without limitation, those identified and/or described on the nonexclusive list of Retained Actions attached hereto as <u>Schedule 1</u>, whether legal, equitable or statutory in nature, arising out of, or in connection with the Debtor's businesses, assets or operations or otherwise affecting the Debtor, including, without limitation, possible Causes of Action against the following types of parties, both domestic and foreign, for the following types of claims: (a) Causes of Action against vendors, and/or suppliers of goods and/or services, travel or other agencies,

---

[1] Capitalized terms that are used herein but are not otherwise defined herein shall have the meanings ascribed to such terms in the Plan of Liquidation of C8 Airlines, Inc. F/K/A Chicago Express Airlines, Inc. (the "Plan").

and/or other parties for overpayments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities, and/or setoff; (b) Causes of Action against utilities, vendors, and/or suppliers of services and/or goods, travel or other agencies, and/or other parties for wrongful or improper termination or suspension of services and/or supply of goods and/or failure to meet other contractual or regulatory obligations; (c) Causes of Action against vendors and/or suppliers of goods and/or services, travel or other agencies, and/or other parties, including for failure to fully perform or to condition performance on additional requirements under contracts with the Debtor before the assumption or rejection of the subject executory contracts; (d) Causes of Action to foreclose or otherwise realize upon any liens, including, without limitation, mechanic's, artisan's, materialmen's, possessory, and/or statutory liens held by the Debtor; (e) Causes of Action for payments, deposits, holdbacks, reserves, or other amounts owed by any creditor, lessor, utility, supplier, vendor, insurer, surety, factor, lender, bondholder, lessor, and/or other party; (f) Causes of Action against any current or former director, officer, employee, and/or agent of the Debtor arising out of employment related matters, including, without limitation, Causes of Action regarding intellectual property, confidentiality obligations, employment contracts, travel charges, wage and benefit overpayments, travel, contractual covenants, and/or employee fraud or wrongdoing; (g) Causes of Action against any professional services provider and/or any other party arising out of financial reporting; (h) Causes of Action arising out of environmental and/or contaminant exposure matters against airlines, airport authorities, fuel suppliers, fuel distribution entities, landlords, lessors, environmental consultants, environmental agencies, and/or suppliers of environmental services and/or goods; (i) Causes of Action against insurance carriers, reinsurance carriers, underwriters, and/or surety bond issuers relating to coverage, indemnity, contribution, reimbursement, and/or other matters; (j) Causes of Action, including counterclaims and defenses, relating to notes, bonds, and/or other contract obligations; (k) Causes of Action against local, state, federal, and foreign taxing authorities for refunds of overpayments and/or other payments; (l) Causes of Action against attorneys, accountants, consultants, or other professional service providers relating to services rendered; (m) contract, tort, or equitable Causes of Action that may exist or subsequently arise; (n) any intracompany or intercompany Causes of Action; (o) Causes of Action arising under Section 362 (the automatic stay) of the Bankruptcy Code; (p) Causes of Action against passengers and/or customers relating to ticket fraud, misuse of frequent flyer miles, or any other loyalty program currency, additional charges, penalties, and/or fees in connection with any ticket or other benefit purchased or acquired by any passenger and/or customer; (q) Causes of Action against any union arising from, among other things, state and/or federal law or under a collective bargaining agreement, including, without limitation, any wrongful or illegal acts, any wrongful termination, suspension of performance, defamation, and/or failure to meet other contract or regulatory obligations; (r) Causes of Action arising out of or in connection with the Debtor's clearinghouse arrangements, whether against such clearinghouses themselves or the current and former members or other participants in such clearinghouses; (s) Causes of Action for unfair competition, interference with contract or potential business advantage, conversion, infringement of intellectual property, or other business tort claims; (t) Causes of Action against other air carriers or other Persons pertaining to antitrust or price fixing, including, without limitation,  violations of Section 2 of the Sherman Act, 15 U.S.C. § 2, related to predatory pricing and/or other predatory or anticompetitive conduct; and/or (u) Causes of Action for purposes of setoff or counterclaim, permissive or mandatory, in any lawsuit with respect to a Claim that is not discharged by the Plan in which the Debtor is a defendant or an interested party, against any Person, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

BDDB01 4360843v1

**SCHEDULE 1**
**NONEXCLUSIVE LIST OF RETAINED ACTIONS**

| Persons[i] Against Whom Retained Action May Be Asserted[ii] | Summary Description of Certain Retained Actions |
|---|---|
| 4 Imprint | Avoidance Claim |
| A & M Parts Inc. | Avoidance Claim |
| AAR Corporation | Avoidance Claim |
| AAR Dist / Cooper | Avoidance Claim |
| Accraline Inc. | Avoidance Claim |
| Action Transmission & Auto | Avoidance Claim |
| ADP. Inc. | Avoidance Claim |
| AEP | Avoidance Claim |
| Aero Quality Sales | Avoidance Claim |
| Aerospace Lighting | Avoidance Claim |
| Air Host Inc. | Avoidance Claim |
| Aircraft Services International – MDW | Avoidance Claim |
| Aircraft Services International – MKE | Avoidance Claim |
| Airgas Great Lakes | Avoidance Claim |
| Airlines Managers Council | Avoidance Claim |
| Airport Connection of Wisc Inc. | Avoidance Claim |
| Airport Days Inn - Suites | Avoidance Claim |
| Airport Delivery Service | Avoidance Claim |
| Airport Shuttle Service | Avoidance Claim |
| AIT Worldwide Logistics | Avoidance Claim |
| All Spares Inc. | Avoidance Claim |
| American Industrial Leasing | Avoidance Claim |
| American Tent & Mfg | Avoidance Claim |
| American Unites Taxicab Co. | Avoidance Claim |
| Anden Business Systems Inc. | Avoidance Claim |
| API | Avoidance Claim |
| API AMR Combs -Memphis | Avoidance Claim |
| Arctic Glacier | Avoidance Claim |
| Associated Bag Company | Avoidance Claim |
| Au Bon Pain | Avoidance Claim |
| Automatic Fire Controls | Avoidance Claim |
| Automotive Optics LTD | Avoidance Claim |
| Avion Graphics | Avoidance Claim |
| Avionica | Avoidance Claim |
| Avis | Avoidance Claim |
| Avsoft Systems LLC | Avoidance Claim |
| B & B courier | Avoidance Claim |
| BADGER CAB | Avoidance Claim |
| Baggage Express | Avoidance Claim |
| Barfield Instruments | Avoidance Claim |
| Barron Equipment Company | Avoidance Claim |

4

| Basso & Co | Avoidance Claim |
|---|---|
| BC Transit | Avoidance Claim |
| Bella Brew | Avoidance Claim |
| Best Western Inn On The Park | Avoidance Claim |
| Best Western Inn Tower | Avoidance Claim |
| Bill's Body Shop | Avoidance Claim |
| Bishop Int'l Airport Authority | Avoidance Claim |
| Briski Industrial Supply Co | Avoidance Claim |
| Brown Aviation Tool Supply Co | Avoidance Claim |
| Bruce Industries Inc | Avoidance Claim |
| Business Aircraft Consumables | Avoidance Claim |
| BWC State Insurance Fund | Avoidance Claim |
| Calder City Taxicab | Avoidance Claim |
| Callahan Aircraft Services | Avoidance Claim |
| Candlewood Suites | Avoidance Claim |
| Cardinal Buses Inc | Avoidance Claim |
| Carquest Of 63rd Street | Avoidance Claim |
| Central Jet Group Inc | Avoidance Claim |
| Ceridian | Avoidance Claim |
| Charlatte GSE | Avoidance Claim |
| Charles A Smith | Avoidance Claim |
| Charles Services Inc | Avoidance Claim |
| Charter Township Of Flint | Avoidance Claim |
| Chicago Communication Service | Avoidance Claim |
| Cintas (Uniformstoyou) | Avoidance Claim |
| Cintas 336 | Avoidance Claim |
| Cintas Corporation #597 | Avoidance Claim |
| City Of Chicago | Avoidance Claim |
| City Of Chicago | Avoidance Claim |
| Clarion Hotel Airport | Avoidance Claim |
| Classic Carriage Limousine | Avoidance Claim |
| CLW Inc | Avoidance Claim |
| CMS Solutions | Avoidance Claim |
| Cobus Industries LP | Avoidance Claim |
| Coca-Cola Bottling | Avoidance Claim |
| Columbia Medical Mfg Co | Avoidance Claim |
| Com-Ed | Avoidance Claim |
| Concentra Medical Centers | Avoidance Claim |
| Concentra Medical Centers | Avoidance Claim |
| Corporate Cab 464 | Avoidance Claim |
| Corporate Limousine Service | Avoidance Claim |
| Corporate Lodging | Avoidance Claim |
| Corporate Wings-SBN | Avoidance Claim |
| Creative Host Services | Avoidance Claim |
| Crowne Plaza Five Seasons | Avoidance Claim |

BDDB01 4360843v1

| | |
|---|---|
| Crowne Plaza-MSN | Avoidance Claim |
| Crystal Mountain | Avoidance Claim |
| CT Corporation System | Avoidance Claim |
| Culligan Water Conditioning | Avoidance Claim |
| Cummins N Power LLC | Avoidance Claim |
| Dailey Express | Avoidance Claim |
| Dallas Airmotive Millville | Avoidance Claim |
| Damian Harden | Avoidance Claim |
| Dane County Treasurer | Avoidance Claim |
| Datasafe Storage Corporation | Avoidance Claim |
| Days Inn Airport-St Louis | Avoidance Claim |
| Dayton Airport Hotel | Avoidance Claim |
| Deloitte & Touche | Avoidance Claim |
| Dennex Inc | Avoidance Claim |
| Department Of Financial Ins | Avoidance Claim |
| Direct Data Products | Avoidance Claim |
| Diversified Communications Grp | Avoidance Claim |
| Downey Tire Co | Avoidance Claim |
| Duncan Aviation-BTL | Avoidance Claim |
| Edmond Wheelchair Repair | Avoidance Claim |
| Eldorado Solutions | Avoidance Claim |
| Elite Baggage Del | Avoidance Claim |
| Embraer | Avoidance Claim |
| Emryan | Avoidance Claim |
| Enterprise Funding Group | Avoidance Claim |
| Epic Equipment Sales & Service | Avoidance Claim |
| Essex Pb & R Corporation | Avoidance Claim |
| EE Medical | Avoidance Claim |
| Executive | Avoidance Claim |
| Executive Delivery Of Grr | Avoidance Claim |
| Federal Express | Avoidance Claim |
| First Access | Avoidance Claim |
| Flight Dimensions Intl | Avoidance Claim |
| Flint Air Service | Avoidance Claim |
| Fontella Electric Inc | Avoidance Claim |
| Four Points Sheraton | Avoidance Claim |
| Four Points Sheraton (MDW) | Avoidance Claim |
| Fox Fire Safety | Avoidance Claim |
| Fox Valley Cab Inc | Avoidance Claim |
| Fraza / Forklifts Of Detroit | Avoidance Claim |
| Future Metals | Avoidance Claim |
| Fyr-Fyter Sales & Service | Avoidance Claim |
| G E Aircraft Engines | Avoidance Claim |
| G E Structured Services | Avoidance Claim |
| G Neil Companies | Avoidance Claim |

| | |
|---|---|
| General Mitchell Intl Airport | Avoidance Claim |
| Gladco Enterprise | Avoidance Claim |
| Grand Rapids City Treasurer | Avoidance Claim |
| Great Lakes Supply & Chemical | Avoidance Claim |
| Great West Life $ Annuity Ins | Avoidance Claim |
| Hamilton Sundstrand | Avoidance Claim |
| Hamilton Sundstrand | Avoidance Claim |
| Hampton Inn | Avoidance Claim |
| Hand Held Products | Avoidance Claim |
| Harlan Global Mfg LLC | Avoidance Claim |
| Harold's Shoe Repair | Avoidance Claim |
| Harry Coleman | Avoidance Claim |
| Harvaire Inc | Avoidance Claim |
| Hawkeye Fire & Safety Co | Avoidance Claim |
| Hayes Beer Distributing | Avoidance Claim |
| Henry Gbade Oladini | Avoidance Claim |
| Hexcel | Avoidance Claim |
| Hinckley Springs | Avoidance Claim |
| Hobart Brothers Company | Avoidance Claim |
| Holiday Inn | Avoidance Claim |
| Holiday Inn Express | Avoidance Claim |
| Holiday Inn Of Moline | Avoidance Claim |
| Holiday Inn-Des Moines | Avoidance Claim |
| Home City Ice | Avoidance Claim |
| Homestead Studio Suites Hotel | Avoidance Claim |
| Howard Johnson | Avoidance Claim |
| Howell Instruments | Avoidance Claim |
| Hummer | Avoidance Claim |
| Huntleigh Corporation | Avoidance Claim |
| Icc Business Products | Avoidance Claim |
| Ikon Office Solutions | Avoidance Claim |
| Illinois Bus And Van | Avoidance Claim |
| Indianapolis Airport Authority | Avoidance Claim |
| Installation Plus | Avoidance Claim |
| Jackson Equipment Testing Serv | Avoidance Claim |
| Jeppesen-Sanderson | Avoidance Claim |
| Judge & Dolph LTD | Avoidance Claim |
| Keith Behnke | Avoidance Claim |
| Kent Co Dept Aeronautics | Avoidance Claim |
| Kentucky State Treasurer | Avoidance Claim |
| Kenyon International | Avoidance Claim |
| Lab Safety Supply Inc | Avoidance Claim |
| Lane Bros Inc | Avoidance Claim |
| Lassel Ice | Avoidance Claim |
| Leader Advertising Agency Inc | Avoidance Claim |

| | |
|---|---|
| Lektro | Avoidance Claim |
| Lewis University | Avoidance Claim |
| Lexington-Fayette Urban County | Avoidance Claim |
| Lift A Loft Corp | Avoidance Claim |
| Logan Square Pest Control Inc | Avoidance Claim |
| Lucas County Treasurer | Avoidance Claim |
| Macneal Health Network | Avoidance Claim |
| Marion Cab Co | Avoidance Claim |
| Mark C Pope Associates Inc | Avoidance Claim |
| Matco Tools | Avoidance Claim |
| Mc Master-Carr | Avoidance Claim |
| McGladrey & Pullen LLP | Avoidance Claim |
| Medaire Inc | Avoidance Claim |
| Memorial Medical Center | Avoidance Claim |
| Mensik's Fleet Maintenance | Avoidance Claim |
| Mercury Air Center | Avoidance Claim |
| Mesaba Airlines | Avoidance Claim |
| Methodist Occupational | Avoidance Claim |
| Metropolitan Airport Authority | Avoidance Claim |
| Michael Lewis Co | Avoidance Claim |
| Michiana Aircraft Service | Avoidance Claim |
| Mid-American Energy Co | Avoidance Claim |
| Midway Industrial | Avoidance Claim |
| Midway Truck Parts | Avoidance Claim |
| Midway Wholesalers Inc | Avoidance Claim |
| Midwest Aero Support Inc | Avoidance Claim |
| Midwest Airlines | Avoidance Claim |
| Montana Jacks Moline | Avoidance Claim |
| Montgomery County | Avoidance Claim |
| Motion Industries Inc | Avoidance Claim |
| Murphy & Hartelius | Avoidance Claim |
| National Business Furniture | Avoidance Claim |
| National Flight Services | Avoidance Claim |
| Nelson Oil Company Inc | Avoidance Claim |
| NES Rentals | Avoidance Claim |
| New York Marriott Marquis | Avoidance Claim |
| Niacc Technology Inc | Avoidance Claim |
| Norcross Air Inc | Avoidance Claim |
| Norman Perry Trophies & Eng | Avoidance Claim |
| Northern Air Inc | Avoidance Claim |
| Northwoods Delivery | Avoidance Claim |
| O & 0 Enterprises Inc | Avoidance Claim |
| Oak Brook Mechanical Services In | Avoidance Claim |
| Occuhealth | Avoidance Claim |
| Office Depot (MDW) | Avoidance Claim |

8

| | |
|---|---|
| Office Depot Inc | Avoidance Claim |
| Officemax | Avoidance Claim |
| Omega Airport Shuttle | Avoidance Claim |
| On The Spot Delivery S | Avoidance Claim |
| Onesource | Avoidance Claim |
| Package Delivery Service | Avoidance Claim |
| Pan Am International | Avoidance Claim |
| Paramount Panels | Avoidance Claim |
| Peoples' Energy | Avoidance Claim |
| Pepsi Americas | Avoidance Claim |
| Piedmont Hawthorne | Avoidance Claim |
| Popular Iron Works | Avoidance Claim |
| Positanos Pizza | Avoidance Claim |
| Prime Flight Aviation Services | Avoidance Claim |
| Print King Inc | Avoidance Claim |
| Prospect Airport Svs Inc | Avoidance Claim |
| QCIA Airport Services LLC | Avoidance Claim |
| Quad City Tech Inc | Avoidance Claim |
| Radisson Grand Rapids East | Avoidance Claim |
| Radisson Indianapolis Airport | Avoidance Claim |
| Raingear Depot | Avoidance Claim |
| Raytheon Aircraft Services | Avoidance Claim |
| Reddington Design | Avoidance Claim |
| Regional Airline Association | Avoidance Claim |
| Regional Help Wanted Com Inc | Avoidance Claim |
| Reliable Disposal | Avoidance Claim |
| Reliable Fire Equipment Co | Avoidance Claim |
| Reliance Standard Life Ins | Avoidance Claim |
| Reliance Standard Life Ins Co | Avoidance Claim |
| Reliance Standard Life Ins Co | Avoidance Claim |
| Roberts Aviation Corp | Avoidance Claim |
| Ron Rosen | Avoidance Claim |
| Royal Excursions | Avoidance Claim |
| Rush Delivery Inc | Avoidance Claim |
| Saab Aircraft Of America | Avoidance Claim |
| Sabre Inc | Avoidance Claim |
| Safety-Kleen System | Avoidance Claim |
| Sage Parts | Avoidance Claim |
| Sage Parts Plus | Avoidance Claim |
| SBC Datacom | Avoidance Claim |
| Servisair | Avoidance Claim |
| Shillelagh Electric Inc | Avoidance Claim |
| Signature Flight Support-DSM | Avoidance Claim |
| Signature Flight-Midway | Avoidance Claim |
| Sisu Services Inc | Avoidance Claim |

9

| | |
|---|---|
| Skyway Airlines | Avoidance Claim |
| Smiths Industries | Avoidance Claim |
| SNH Aerospace Services Inc | Avoidance Claim |
| Specialty Bulb Co Inc | Avoidance Claim |
| Springfield Airport Authority | Avoidance Claim |
| St Joseph County A / P Authorit | Avoidance Claim |
| Standard Battery Inc | Avoidance Claim |
| State Of Florida | Avoidance Claim |
| Sterling Courier Inc | Avoidance Claim |
| Subway | Avoidance Claim |
| Tano's Pizza | Avoidance Claim |
| Target Auto Repair | Avoidance Claim |
| Taylor Plumbing Inc | Avoidance Claim |
| Terminix International | Avoidance Claim |
| The Blueprint Shoppe Inc | Avoidance Claim |
| The Brickman Group LTD | Avoidance Claim |
| The Copy Shop | Avoidance Claim |
| TLD America | Avoidance Claim |
| TMG Airepairs | Avoidance Claim |
| TNTLE LLC | Avoidance Claim |
| TOL Aviation Inc | Avoidance Claim |
| Toledo Lucas County | Avoidance Claim |
| Tracer | Avoidance Claim |
| Trans State Airlines | Avoidance Claim |
| Trans Tech | Avoidance Claim |
| Traveling Bags | Avoidance Claim |
| Troutman Sanders LLP | Avoidance Claim |
| U S Dept Of Transportation | Avoidance Claim |
| U S Drug Testing Services | Avoidance Claim |
| Unicare | Avoidance Claim |
| United Limo | Avoidance Claim |
| V / Gladieux Enterprise Inc | Avoidance Claim |
| Van Ausdall & Farrar Inc | Avoidance Claim |
| Vision Service Plan-(IV) | Avoidance Claim |
| Visiontron | Avoidance Claim |
| VMS Aircraft | Avoidance Claim |
| W W Grainger (SPI) | Avoidance Claim |
| Waste Management Illinois | Avoidance Claim |
| Wencor West | Avoidance Claim |
| Western Remac Inc | Avoidance Claim |
| Willrent Inc | Avoidance Claim |
| Wisconsin Aviation Four Lakes | Avoidance Claim |
| World Way Corporation | Avoidance Claim |
| Worthington Aviation Parts | Avoidance Claim |
| Wright Bros Aero Inc | Avoidance Claim |

| Yellow Cab | Avoidance Claim |
| Yellow Freight System Inc | Avoidance Claim |
| Evansville Airport | Any and all causes of action, including counterclaims, whether legal, equitable or statutory in nature, arising out of, or in connection with the Debtor's businesses, assets or operations or otherwise affecting the Debtor. |

---

[i] Reference to a Person shall also be to such Person's affiliates, principals, employees, agents, officers, directors, attorneys and other professionals.

[ii] The Debtor expressly reserves the right to pursue any and all Avoidance Claims against all payees, whether or not such payees are included on this Schedule.

11

**<u>Exhibit 1</u>**

James M. Carr (#3128-49)
Terry E. Hall (#22041-49)
Stephen A. Claffey (#3233-98)
Jeffrey C. Nelson (#25173-49)
BAKER & DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000

Attorneys for Debtors and Debtors in Possession

## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ATA Holdings Corp., et al.,[1] | ) | Case No. 04-19866 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

## NOTICE OF ENTRY OF ORDER CONFIRMING SECOND
## AMENDED PLAN OF LIQUIDATION OF C8 AIRLINES, INC.,
## F/K/A CHICAGO EXPRESS AIRLINES, INC.

1.     **Confirmation of the Plan and Effective Date.**  On June ___, 2006, the United States
Bankruptcy Court for the Southern District of Indiana, Indianapolis Division (the "Bankruptcy
Court") entered an order (the "Confirmation Order") confirming the Second Amended Plan Of
Liquidation Of C8 Airlines, Inc., f/k/a Chicago Express Airlines, Inc., dated April 13, 2006 (the
"Plan") filed by C8 Airlines, Inc., f/k/a Chicago Express Airlines, Inc. ("C8" or the "Debtor"), a
debtor in one of the above captioned cases (the "Chapter 11 Case").  The entry of the
Confirmation Order and the satisfaction of the conditions to confirmation established the
**Effective Date as June ____, 2006.**  Free electronic copies of the Plan and Confirmation Order
are available at http://www.bmccorp.net/ata.  Hard copies may be obtained at your own expense,
by written request to the Liquidating Debtor's claims and notice agent, BMC Group, Re: ATA
Holdings, et al., P.O. Box 1035, El Segundo, CA 90245-1035.

2.     **Exculpation and Limitation of Liability.**  Except as otherwise specifically provided in
the Plan, the Debtor, the Creditors' Committee, the members of the Creditors' Committee in
their capacities as such, the Indenture Trustee, the ATSB Lender Parties (solely in such capacity)
and BearingPoint, Inc. as the Loan Administrator under the ATSB Loan agreement, and any of
such parties' respective present or former members, officers, directors, employees, advisors,
attorneys, representatives, financial advisors, investment bankers, or agents and any of such
parties' successors and assigns, shall not have or incur, and are hereby released from, any claim,

---

[1]    The Debtors are the following entities: ATA Holdings Corp. (04-19866), ATA Airlines, Inc. (04-19868),
Ambassadair Travel Club, Inc. (04-19869), ATA Leisure Corp. (04-19870), Amber Travel, Inc. (04-19871),
American Trans Air Execujet, Inc. (04-19872), ATA Cargo, Inc. (04-19873), and C8 Airlines, Inc. f/k/a Chicago
Express Airlines, Inc. (04-19874).

obligation, Cause of Action, or liability to one another or to any holder of a Claim or an Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Debtor's Chapter 11 Case, negotiation and filing of the Plan, filing the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

**3.     Bar Dates.**

        a.      <u>Administrative Claims Generally</u>. By Order of the Court, the bar date for filing an Administrative Claim (not applicable to the ATA Administrative Claim or Professional Fee Claims) in the Chapter 11 Case was established as October 25, 2005.

        b.      <u>Professional Fee Claims and Substantial Contribution Claims</u>  Any and all applications for the request for the final allowance of Professional Fee Claims incurred by professionals employed pursuant to Sections 327 and 1103 of the Bankruptcy Code or applications for substantial contribution to the Chapter 11 Case under Sections 503(b)(3), (4), and (5) shall be filed with the Bankruptcy Court and served upon counsel to the Debtor on or before the date which is sixty (60) days after the Effective Date.  Failure to file and serve timely such applications or requests shall result in the disallowance of such Professional Fee Claims and/or substantial contribution claims and such Professional Fee Claims and/or substantial contribution claims shall be barred forever.

**4.     Executory Contracts and Unexpired Leases**.  All executory contracts or unexpired leases not already rejected or terminated are rejected as of the Confirmation Date pursuant to Article 7.1 of the Plan.

**5.     Right to Continue to Receive Notice and Notice Parties.**  Unless a party currently receiving notice of pleadings pursuant to Bankruptcy Rule 2002 files a request to continue to receive notice of all pleadings filed in these cases and serves such request on counsel for the Debtors and for the Creditors' Liquidation Committee **within 30 days of the Effective Date**, such party will be removed from the service and notice list in these cases.

From and after the Effective Date a pleading or claim required to be filed pursuant to this Notice, the Plan, or the Confirmation Order, must be served on (1) C8 Airlines, Inc., 7337 Washington Street, Indianapolis, IN 46231, Attention:  General Counsel; (2) BAKER & DANIELS LLP, 300 North Meridian Street Suite 2700, Indianapolis, Indiana 46204 Attention:  Terry E. Hall; (3) AKIN GUMP STRAUSS HAUER & FELD LLP, 590 Madison Avenue, New York, NY 10022, Attention:  Lisa Beckerman; (4) United States Trustee, 101 W. Ohio, Indianapolis, IN 46204, Attention:  Joe McGonigal; and the 2002 List as it may have been modified.

Dated: June 9, 2006

/s/ Terry E. Hall

James M. Carr
Terry E. Hall
Stephen A. Claffey
Jeffrey C. Nelson
BAKER & DANIELS LLP
300 North Meridian Street
Suite 2700
Indianapolis, Indiana 46204
(317) 237-1190

Attorneys for Debtors and Debtors in Possession